JOSIAH B. WEBB, administrator, *vs.* PORTLAND & KENNEBEC RAILROAD COMPANY.

In an action for injuries caused by being thrown from a carriage by a locomotive at a railroad crossing, a variance will, after verdict, be overlooked as immaterial, when there is no dispute or misunderstanding as to the precise spot on the face of the earth where the accident occurred, and when the case declared upon and that proved, do not require or admit different kinds or degrees of proof, or the application of different rules of law.

Facts from which a highway by dedication may be inferred.

Whether a person, injured by a locomotive at a railroad crossing, was or not, at the time of the collision, in the exercise of ordinary care, is a question for the jury to determine from the evidence, under proper instructions.

If a party desires more definite instructions upon any particular point, he should make a request therefor.

A verdict must be clearly against the weight of evidence, in order to justify the full court in setting it aside upon that ground.

A compliance with R. S. of 1857, c. 51, §§ 15 and 19, on the part of a railroad corporation, does not absolve it from observing such other precautions as reasonable and ordinary care may require in crossing a thoroughfare leading to and from a city.

Whether or not a railroad company is guilty of negligence in not employing a flagman at a certain crossing, is a question of fact.

When one railroad company is by permission using the track and easement of another, the former is held to observe such precautions for the safety of the public at a crossing, as shall be fully equivalent to those required by reasonable care and prudence of the latter.

The establishment of a flag station at a railroad crossing is legal evidence of the consent of the railroad corporation to whom the easement and right of passage with trains belong, that the way may be used as such.

Webb *v.* Portland & Kennebec Railroad Company.

The establishment of a flag station at a railroad crossing, cannot reasonably be construed as an assertion of a paramount right on the part of the corporation.

In the trial of an action for an injury alleged to have been received while passing along a " public street and highway across the railroad track of the defendants," if the evidence of a legal location is wanting, it is proper to instruct the jury, that there was no legal highway by reason of any proper location; but that if the jury should find, that, with the consent of the company owning the track and having the right of passage there with trains, and of the owners of the fee in the land, there had been a thoroughfare in open and continuous use by the public, and all who had occasion to go between the termini mentioned, and that use commenced prior to the running of the defendants' trains there, and continued to the time of the accident without objection made by the company owning the track, or the owners of the fee, or the defendants, they might thence infer the existence of such a way and right of crossing the railroad at grade there, as would bind the defendants to the use of the same precautions, prudence, care, and diligence in running their engines, as they would be bound to exercise if a highway had been located across the track there at grade.

On exceptions and motion.

CASE for injuries alleged to have been received by Nathan Webb, the plaintiff's intestate, on the 28th of March, 1867, while "lawfully passing with his jigger drawn by two horses, along the public street and highway in Portland, leading from Portland bridge across the railroad track of the defendants, into Canal street."

*C. C. Thompson,* called by the plaintiff, testified substantially that he had been flagman for the Portland, Saco, and Portsmouth Railroad Company at the crossing near their depot, in Portland, for eight years; that he was never employed as flagman by the defendant corporation, but practiced flagging the latter's trains when they were passing that crossing; that he witnessed the circumstances connected with Nathan Webb's attempting to cross, in March, 1867;

that witness, standing at A, saw Webb with two horses attached to an unloaded jigger, coming from the bridge toward Commercial street; that at the same time a P. S. & P. train was moving from the P. & K. depot toward the P. S. & P. depot, whereupon witness swung his flag and stopped Webb at B; that as soon as the train passed, witness drew up his flag, and thereupon Webb started along; that witness could see further down the track than Webb, but could not see defendants' engine because the P. S. & P train intervened; that witness soon heard the bell of both locomotives, and then saw the defendants' engine moving from the P. S. & P. depot toward the defendants' depot on the track nearest Commercial street; that witness, seeing Webb already on the crossing, hallooed to him to hasten; that Webb struck his horses and drove as fast as he could; that when witness first discovered the defendants' engine moving toward the crossing, it would have been more risky for Webb to attempt to return than go forward; that the engine struck the hind wheel of the jigger at C, and threw Webb upon the ground; that both bells were ringing at the same time; and that trains run over that crossing one hundred times a day.

There was other evidence introduced by the plaintiff tending to show that Webb could not see the defendants' engine because of the intervening train when he started to cross; and there was evidence introduced by the defendants, tending to show that he could see the smoke-stack of the engine over the intervening train.

*H. B. Hussey*, called by the defendants, testified, substantially, that witness was driving the defendants' locomotive which struck Webb's jigger in March, 1867; that witness had been to the P. S. & P. depot with a freight-train, and was returning; that when within ten feet of the crossing, witness first saw the heads of a pair of horses crossing ahead of the engine; that witness immediately reversed his engine to prevent collision, but the bunter caught the rim of the after part of the jigger, and as the locomotive advanced, the team was swung round, and the pole of the jigger came in contact with the back driving-wheel of the locomotive, and the horses were thrown down; that the locomotive stopped at the end of the

planking of the crossing next the P. & K. depot; that bell was ringing all the time; that the brakeman, looking on the side next the bridge, gave no notice of the train, and witness, looking out on the side next Commercial street, did not see it until it was on the crossing; and that the locomotive was moving four to five miles an hour.

*Charles E. Barrett*, called by the defendants, testified that he was clerk of the P. S. & P. Railroad Company; that the records of the location were burnt; that formerly, the Portland bridge extended from the brow of the hill above the P. S. & P. railroad tracks; that the bridge company occupied the land under the bridge until the location of the P. S. & P. railroad; that the track where the collision occurred, is the P. S. & P.'s track, and is used by the P. & K. company, by consent; that the land covered by the road as now traveled, and extending to the bridge, is the land formerly covered by a portion of the bridge, which extended from the present bridge to Brackett street; that the bridge was altered several years ago; that the P. S. & P. Company never made any objection; the way is a great thoroughfare; that the bridge was surrendered to the county.

All other essential parts of the evidence are recited in the opinion.

The presiding justice instructed the jury, *inter alia*, that if the collision was the result of pure accident, and neither party was in fault, the plaintiff would not be entitled to recover; and that if any want of care on the part of Nathan Webb contributed to produce the accident, the action could not be maintained.

That whether the plaintiff's intestate, at the time of the collision, was or was not in the exercise of ordinary care, was a question of fact for the jury to determine, upon all the evidence.

That if the jury should find that Nathan Webb was in the exercise of due care, they would then inquire whether or not the defendants were in fault in not having their engine flagged, by the flagman stationed at the crossing, and in running their engine out from the P. S. & P. depot, as shown by the evidence in the case; and that it was a question of fact for the jury to determine, whether

it was a neglect on the part of the defendants in not having their engine flagged by the flagman stationed at said crossing.

That if the jury should find that said Webb was in the exercise of due care, and that the collision occurred solely through the default, want of care, and negligence of the defendants in not having their train flagged, or by the unskillfulness or negligence of their engineer in the management of defendants' engine, then the plaintiff would be entitled to recover whatever damages the plaintiff's intestate received by reason of such collision.

That no legal location of any highway at the place of the accident, by the county commissioners, or other proper authority, was shown by the testimony, and that there was not any legal highway at that place by reason of any proper location of the same; but if the jury should find, that with the consent of the P. S. & P. Railroad Company, the corporation to whom the easement and right of passage with trains there belonged, and with the consent of the owners of the fee in the land, there had been a thoroughfare in open and continuous use by the public and all who had occasion to go there, from the end of the structure of the bridge, as newly laid down, to some one of the streets of Portland (that use commencing at a period previous to any running of engines or cars there by defendants), and continuing to the present time without objection made by the P. S. & P. Railroad Company, or the owners of the fee, or the defendants, they might infer from these facts the existence of such a way and right of crossing the railroad at grade there, as would bind the defendants to the use of the same precautions, prudence, care, and diligence in running their engines and trains there, that they would be bound to exercise if a street or highway had been legally located across the track there at grade. And in determining the question as to whether there was such consent on the part of the owners of the fee, the jury might take into consideration the nature and amount of travel there, and the want of evidence of objection made by the owners of the land. And as to the consent of the railroad company, they may consider these facts, and also the existence of a planking at the crossing, if it was for the ac-

commodation of the travel crossing there, and the employment of a flagman by the P. S. & P. Railroad Company to flag their trains at that point, and the erection there of a flag-station box ; that if the jury found consent of these parties to the use of the crossing as a public highway, and the subsequent constant use of it by the public as such, it is an end of all claim of paramount right on the part of the railroad to run their trains there without the due and reasonable precautions, prudence, and care which they ought to observe at the crossing of a highway legally located ; that it was the end, too, of any claim on the part of the defendants, that Webb was on the track as a trespasser, or as subject to any other duty or obligation than those which rest upon all persons crossing a railroad track at grade in a regularly located highway ; that it was not competent for the railroad company to say, by their acts or omissions, to the public, we permit you to use this place on our track for a common crossing to be used by the public, but still to urge, when an accident happens, we are under no obligation to use the ordinary precaution, care, and diligence to avoid collision with those who pass there, that we might be under if there were a legally located street.   That the particular question is, whether there was, with the assent of the corporation (which may be inferred from their acts or omissions if they show it), a crossing there in use over the track of the railroad, which would call for a greater degree of caution in the exercise of due care by the defendants and their servants, than at other places on their road, where no crossing existed.   That it was not for the defendants to say, that there was no highway there, if there was a crossing which they, and all others interested permitted the public to use as such, and the jury find that it was in fact, in great and constant use.

The defendants contended that as the engineer of a locomotive engine, moving with great momentum, with its direction fixed by the line of its rails, has less power of arresting its course, or changing the direction of its movement than the driver of a vehicle drawn by a horse ; that the railroad has superior rights at a crossing, and the driver of a vehicle, drawn by a horse, is under greater obliga-

tion to arrest his course or change his direction than the driver of the locomotive, because he can more easily do so.

The presiding justice did not instruct the jury that the railroad had any superior or paramount rights at a crossing over the travelers by the highway, but did instruct them, that, if they found both parties had rights at the crossing, they could not use the same space at the same time. Each party on crossing or approaching was bound to use his privilege with such due and reasonable precaution, and prudence, and actual diligence at the time, as may enable him to use it with safety to the other party passing, in like exercise of due care. That the degree of prudence, precaution, and care is the same upon each party. The fact that teams can be more easily controlled is a fact to be considered in determining whether the party exercised due care. The plaintiff must show, the burden being on him, his right to be there, and that he was lawfully there, and that on his part he was in the exercise of prudence and care, and that no negligence of his contributed to the injury, but that it occurred solely by the negligence and want of care of defendants. The defendants requested the following instructions:

1. That if the defendants were, under the authority and with the consent of the P. S. & P. Railroad Company, running their train on the location of the P. S. & P. Railroad, as it existed prior to the lowering of the bridge and the conveyance of the rights of the bridge company to the county, the defendants had the same rights and were subject to no greater liabilities in running their trains than the P. S. & P. Railroad Co.

2. That the owners of the fee in the land could not dedicate it to the use of the public for a highway, so as to interrupt the right which the railway had previously acquired, and which were not subject to any right to crossing the same at grade as a highway.

3. That the railroad company, having only an easement, had no right to forbid the use of a highway if the owners of the fee consented; that no consent of the railroad company can be implied from their not objecting, as they had no right to object.

The court gave the first of the above-requested instructions, but

declined to give the other requested instructions, with the remark that the jury understood that they must find the assent of all the parties interested.

The defendants alleged exceptions, and filed a motion to set aside the verdict as being against law and the weight of evidence.

*Shepley & Strout*, in support of the motion contended that

I. The burden of proof was on the plaintiff to show that he was in the exercise of ordinary care and prudence. The case conclusively shows the contrary. Had Webb used ordinary prudence, he would have looked up to see the approaching locomotive, and the collision would have been avoided. *Warren* v. *Fitchburg R. R. Co.*, 8 Allen, 230. *Meesel* v. *Lynn & Boston R. R. Co.*, 8 Allen, 234. *Butterfield* v. *Western R. R. Co.*, 10 Allen, 533. *Spencer* v. *Utica & Schenectady R. R.*, 5 Barb. 337. *Brand* v. *Same*, 8 Barbour, 368. *Brooks* v. *B. & N. F. R. R.*, 27 Barbour, 532. *Dascomb* v. *Buffalo State Line R. R. Co.*, 27 Barbour. *Gleason* v. *Bremen*, 50 Maine, 222. *Hartfield* v. *Roper*, 21 Wendell, 615.

II. There is a fatal variance between the plaintiff's writ and the proof. The declaration avers that the injury was received by plaintiff in passing over a public street and highway in said Portland, leading from Portland bridge across the railroad track of the defendants, into Canal street. The case finds that the injury was received upon private land rightfully used by trains of the P. S. & P. Railroad, and whilst crossing their track, instead of the track of the defendants. *Shaw* v. *Boston & Worcester R. R. Co.*, 8 Gray, 45.

In support of the exceptions, defendants contended that

I. The instruction to the jury, " That whether the plaintiff's intestate was or was not in the exercise of ordinary care, was a question for the jury to determine upon all the evidence in the case," is excepted to upon the following grounds :

1. The question of ordinary care, where the facts in relation to that question are admitted, or undisputed, and not in controversy, is a question of law and not of fact. *Cooper* v. *Waldron*, 50 Maine,

81. *Spofford* v. *Harlon*, 3 Allen, 179. *Denney* v. *Williams*, 5 Allen, 1.

2. If the question of ordinary care, upon a state of facts not controverted, is not purely a question of law, it is at least a mixed question of law and fact, and one not proper to be left to the jury without any instructions in relation to the principles of law applicable to the facts in the case, and as in this case under a restriction which virtually leads the jury to believe that no rules of law limited or regulated the construction they might see fit to give to the facts.

II. The question, " Whether it was a neglect on the part of the defendants in not having their engine flagged by the flagman stationed at their crossing," was not " a question of fact for the jury to determine," but a pure question of law.

1. The duties and liabilities of railroad corporations at public and private crossings, are regulated by statute. R. S. of 1857, c. 51, §§ 15 and 19. Defendants were under no legal obligations to keep a flagman at this crossing.

2. Whether they were under such obligation is a question of law and not of fact.

3. The evidence shows no flag was displayed by the defendants, no flagman employed by them and no flag station established or maintained by them.

4. The instruction assumes that the defendants did not flag their engine at the crossing; and then, instead of instructing the jury as a question of law, either that it was or was not the defendants' duty to flag their engine at such a crossing, it leaves them to find that question of neglect as one of fact.

5. The error in this instruction, and the injustice of it to the defendants, is readily seen by this.

The legislature prescribes precisely what a railroad should do to prevent accidents at a crossing. If the legislature directs the engineer to ring his bell, and he does so, has a jury a right to find negligence because a whistle was not also sounded? or if the legislature requires a steam-whistle to be sounded, and this is done, can a jury find neglect, as a question of fact, because a bell is not rung

when no law requires it? If the legislature requires either a bell or a whistle, or both, and does not require the exhibition of a flag, the jury have no right to find neglect as a matter of fact, from the want of exhibition of the flag; and an instruction that they may do so is erroneous, and calculated to mislead.

III. The third instruction is erroneous for the reasons given above, because it incorporates the supposed default of defendants in not having their train flagged, as giving a right to recover, when, by law, such omission of a flag was not a default or negligence.

IV. The fourth instruction places the defendants upon the same footing as if there was a highway.

1. If there was a highway, neither the P. S. & P. R. R. Co. nor defendants were obliged to keep a flagman at the crossing. Therefore, the omission of the defendants to flag their engine in this instance, was no default or negligence.

These defendants never did it in any case.

2. If the judge intended to instruct the jury, that if the P. S. & P. Railroad had been in the habit of flagging their engines, and Webb knowing that such was their habit, and relying upon it, had trusted to that mode of warning against the danger, and was misled by the omission of a customary warning upon which he had a right to rely, and was thereby injured by a collision, such an instruction would have been tenable, perhaps, as against the P. S. & P. Road, who had employed the flagman and kept up the flag station.

3. But this instruction could not have been given properly, as applicable to these defendants, who were not in law obliged to employ, and who never, in fact, did employ any person for such purposes. *Fletcher* v. *Boston & Maine R. R. Co.*, 1 Allen, 13.

4. The employment of a flagman to give warning of approaching trains, was an assertion of the paramount right of the railroad, a warning and notice to all people to keep off the track.

Yet the court misconstrued it into a fact, from which the jury might infer dedication and right to cross in front of a locomotive, although it was an express notice to the contrary.

V. The second and third requested instructions should have been given.

*S. C. Strout & H. W. Gage*, for the plaintiff.

BARROWS, J. Under the motion to set aside the verdict in this case, a new trial is claimed upon two grounds.

1. The defendants insist that there is a fatal variance between the plaintiff's writ and the proof, inasmuch as the declaration avers that the injury was received when the plaintiff's vehicle was passing along a public street and highway in said Portland leading from Portland bridge across the railroad track of the defendants into Canal street; and the proof, according to the defendants' view of it, shows that the injury was received upon private land, rightfully used by trains of the Portland, Saco, & Portsmouth Railroad Co., and while crossing their track, instead of the track of the defendants.

There is no dispute or misunderstanding as to the precise spot on the face of the earth where the accident occurred. It was in the immediate vicinity of the defendants' depot in Portland, between it and the depot of the P. S. & P. R. R. Co., on a track belonging to and laid down by the latter Railroad Co., for the purpose of making a more convenient connection with the former, in constant and rightful use by both roads for their mutual convenience, and at a point where this track (with several others similarly used) intersects a great thoroughfare, hourly accommodating a large amount of public travel, and leading from Portland Bridge into Canal street.

If it was a misstatement to call this thoroughfare a public street and highway, and this track, which the defendants were rightfully using, the defendants' track, it is plain that the variance was not such as could mislead the defendants in the preparation of their defense, and it is entitled to nothing more than its legitimate weight as a purely technical objection, unless the case set forth in the declaration and that which was established by the testimony require or ad-

mit different kinds and degrees of proof, and the application of different rules of law. Unless some substantial cause of this sort is found, under our laws which forbid the arrest of judgment for any circumstantial errors or mistakes which by law are amendable when the parties and the case can be rightly understood, a variance between the declaration and the proof will be overlooked after verdict, and a new trial will not be granted on account of it. Such a variance does not seem to constitute any better reason for delaying judgment and putting parties to the inconvenience and expense of a new trial, than it would for finally arresting judgment in the case.

When the occurrence out of which the controversy arises is the same, and the ground upon which damages are claimed is substantially the same, a casual misdescription of the ownership of the track, misleading no one, is simply immaterial. Moreover it can hardly be accounted a misdescription to speak of the track while the defendants were using it, as the defendants' track. *Pro hac vice*, it was theirs. They were lawfully using it by virtue of an understanding with the other corporation, driving their own engine over it with their own servants. *Quoad* the plaintiff, it is not for them to say the track was not theirs. They were there for the time being with the rights of proprietors, exercising the same powers, subject to the same duties and liabilities, so far as the public were concerned, neither more nor less. But, say the defendants, it was not a public street and highway. The assertion is based upon an alleged failure to show a legal location. But the establishment of a legal location is not the only mode of proving the existence of a public street and highway. Evidence of a long-continued uninterrupted public use, is properly received to establish the existence of a highway by dedication.

The testimony here shows, that for some twelve or fourteen years previous to the trial, this street has been openly and publicly used by any one who chose to go there. There was no testimony tending to show that the proprietors of the land had ever made any objection to the public use of it as a highway, or that the defend-

ants had done so, though they had been running their cars over the tracks of the P. S. & P. Railroad there, under an agreement with the latter company, for some years previous to the accident.    Mr. Barrett, an officer of the P. S. & P. Railroad, a witness for the defendants, testifies that the street has been used by the public generally; that it is a great thoroughfare; that the travel to Portland bridge has increased since the bridge was lowered to the grade of the railroad; and that he knows of no objection ever being made by that corporation, which owns the tracks and the right of way for railroad travel there, and has put up the sign-board required by the statute, and established a flag station such as is customary at the crossing of highways which are greatly frequented.

Here was ample evidence from which a dedication by all parties having any right or interest in the land there, or any easement liable to be interrupted by the establishment of a highway, might be inferred.

If, as between these parties, any evidence of assent to the dedication is requisite in order to make the description of this thoroughfare as a public street and highway strictly correct, there are the same *indicia* of assent which were held sufficient in *Hobbs* v. *Lowell*, 19 Pick. 410 to charge the city with liability for non-repair in a suit for damages alleged to have been suffered by reason of a defect in a highway.

In view of the foregoing testimony, it cannot be said that the verdict is against evidence upon this point, or that there is any variance herein between the declaration and the proof.

And even if the evidence fell short of establishing a highway *de jure*, we think that upon the issue presented by these pleadings and upon the state of facts exhibited by this report, a variance in this particular would be an immaterial one, not affecting the rights of the parties or the rules of law or evidence applicable in the trial of the cause, or the inferences to be drawn from the testimony, in any manner.    Here was an avenue through which poured the whole tide of travel into and out of the city in that direction, affording the most direct route to the defendants' freight depot and grounds;

used and recognized by all and sundry, as a highway for years before the defendants began to run over the track of the P. S. & P. Railroad located there. We think that the instructions given by the presiding judge with regard to the effect of a finding by the jury that there had been and was a thoroughfare there, in open and continuous use by the public and all who had occasion to go there, without objection made by the owners of the fee, or by the P. S. & P. Railroad Co., which had an easement there, or by the defendants, were strictly correct, and that it was not for the defendants to say in this action that there was no highway there, if there was a crossing which they and all others interested permitted the public to use as such, and which was, in fact, in great and constant use. Under such circumstances, the plaintiff would be there with the rights of a traveler on a highway, and as regarded him and all others traveling there, the defendants would be subject to the same duties and liabilities as if the street had been a highway *de jure* as well as *de facto*. As regards the issue which these parties were litigating then, a variance of this description, were its existence demonstrated, would be immaterial. The defendants, upon this point, rely upon the case of *Shaw* v. *Boston & Worcester R. R. Corp.*, 8 Gray, 45. We do not question the correctness of that decision, as to the materiality of the variance in that case. The variance between the declaration and the proof, as to the place of the accident, changing it from the highway to a point without the limits of the highway, on the defendants' grounds, would necessarily change the whole course of inquiry, and affect all the inferences to be drawn as to the suitableness of the horse, the degree of skill and care in driving exercised by the plaintiff, and other matters vital to the plaintiff's suit. The reasons assigned for holding the variance to be in that case radical and essential, do not exist here. It mattered not (if the plaintiff was at the place of the accident with the rights of a traveler on a highway, and the defendants were there, subject to the duties and liabilities of a railroad crossing a highway at grade, as was assuredly the case upon the testimony adduced here), whether there was or was not error in the

proceedings of the county commissioners, a dozen or fifteen years before. When all parties were proceeding upon the hypothesis that there was no error, it would not change the relations of the parties in this suit to each other, should it be found that all were mistaken in that particular.

2. In connection with this part of the case we will consider the exception taken to the refusal to give the second and third requested instructions.

We fail to perceive the propriety of these requests. The two propositions are manifestly inconsistent with each other, and if the first is correct, as we think it is, the other is clearly unsound. Granted that it would not be competent for the owners of the fee to create a highway by dedication, where it would interrupt the previously acquired right of the railroad to run their trains without being subject to the delays and precautions incident and necessary to crossing a highway at grade, it necessarily follows, that the railroad company would have the right to object to any such interruption of their easement if it were attempted. The instruction given, required the jury to find the assent of the proprietors, both of the fee and the easement, and were correct, and embraced, by necessary implication, all the sound law to be found in either of the requests which were refused.

3. Complaint is made of the instruction requiring the jury to determine upon all the evidence in the case, whether the plaintiff's intestate was or was not in the exercise of ordinary care. It is claimed that that question where the facts relating to it are admitted or undisputed, is one of law and not of fact. The contrary doctrine was maintained in *Patterson* v. *Wallace*, 28 Eng. Law and Eq. 48, where although there was no controversy about the facts, and the only question was whether a certain result was to be attributed to negligence on the one side or rashness on the other, the judgment of the court below was reversed because the judge had withdrawn the case from the jury, and it was held in the House of Lords to be a pure question of fact for the jury.

But if it be conceded that cases may arise where some unques-

tioned fact may afford such conclusive proof of negligence on the part of the plaintiff as would preclude him from recovering and justify a direct ruling to that effect, a glance at the testimony here will suffice to show that this is not one of them.

There were several railroad tracks in close proximity. Webb's precise position with regard to the approaching engine; his actual distance from the track on which the accident occurred when he started; the length of time he had been waiting for the other train to pass, and the time required for him to cross the defendants' track; the degree of speed with which the defendants' engine approached the crossing, and, more than all, the possibility or impossibility of Webb's seeing the smoke-stack of defendants' engine over the other moving train if he had looked in that direction,—all matters, having an important bearing upon the question of negligence, were left too uncertain by the testimony to form the basis of a peremptory ruling upon that question as a matter of law. It was necessary that the jury should pass upon it as a mixed question of law and fact under proper instructions. The counsel for the defendants now complain that such instructions were not given. The exceptions do not show what instructions were given upon this part of the case, nor do they purport to contain all that were in fact given. The presumption is that they were correct. The defendants' counsel seem to have rested satisfied with them at the time, for they requested nothing more definite, as they should have done if they desired rulings applicable to particular hypotheses or contingencies which the judge was omitting to notice.

4. The alleged want of ordinary care on the part of the plaintiff is also relied on in support of the motion to set aside the verdict, forming the second ground on which it is claimed that the motion should be sustained. We are by no means satisfied that the jury erred here,—still less that their decision was so clearly wrong as to justify us in sustaining the defendants' motion.

The injured man was not present to testify to what he did or omitted to do in the way of precaution. What he might have done and did do is matter of inference merely, to be reached by a com-

parison of the not very precise and definite statements of by-standers occupying different points of view. Bailey, the defendants' station agent, says he stood by the side of Thompson, the flagman, and not many feet from Webb, and that he saw the smoke-stack of the approaching engine over the intervening freight-train, and he or some one hallooed a warning to Webb, and he sees no reason why Webb could not see the approach of the engine as well as himself. But he says it was after Webb had started and got the length of his horses that he himself saw it; so that the warning was too late to be effective. On the other hand Thompson, the flagman of the P. S. & P. Railroad, who was apparently nearer to Webb than Bailey, testifies that he could see a little further down the track than Webb could; that the P. S. & P. freight train prevented them from seeing defendants' engine; that neither he nor Webb could see it when Webb started; that he did not see it until Webb was half way across the track. We must remember that Webb's horses, being used to haul goods to and from the depot, were accustomed to see the cars in motion; that they were standing in close proximity to the train which was moving down the other track; that Webb had waited at the flagman's signal until that train was clear of the crossing; that he had no load, and that he was nearly across the track when the collision occurred, the engine striking the hind-wheel of his vehicle; that the defendants' engine had just before been moving in the opposite direction, so that its return to the crossing was unexpected. We cannot say that we see conclusive evidence of a want of ordinary care in his attempt to cross when the flagman of the other road drew in his flag after the passage of his train. The flagman, though employed by the other road, was accustomed to flag the defendants' engine at this crossing, as a matter of accommodation, but did not flag this one because he did not see it nor suppose it was coming until too late to prevent the accident.

5. The defendants do not contend in argument here that the verdict was against the evidence on any other point except those which we have considered, nor that there was not negligence in the man-

agement of their train, the engineer in charge testifying that he did not see Webb's team until the engine was within ten feet of him, and that the brakeman who was looking out on the side from which Webb was approaching, gave him (the engineer) no notice; but they complain that it was left as a question of fact for the jury to determine whether the defendants were guilty of negligence in not employing a flagman and having their engine flagged at the crossing.

If the jury decided the question correctly as we think they did (looking at all the evidence touching the situation of this crossing and the use made of it both by the public and the railroad companies), the defendants ought not to complain because the point was not ruled peremptorily against them.

But the defendants claim that whether there was negligence in this omission was a pure legal question, and should have been ruled in their favor; because they say that the duties and liabilities of railroad corporations at public and private crossings are prescribed and regulated by R. S., c. 51, §§ 15 and 19. But the legislature do not undertake to define or point out all the precautions which reasonable and ordinary care may require a railroad company to observe in crossing a crowded throughfare leading into a city.

A proper regard for the security of human life imperatively requires them to make use of other and greater safeguards in such a locality than those which the legislature have deemed sufficient for ways in general, many of which are little frequented.

In the language of the court in *Bradley* v. *Boston & Maine R. R. Co.*, 2 Cush. 539: "The statute makes certain positive regulations, and the defendants, at their peril, are bound to comply with them; but there are no negative words, and there is no implication that a compliance was to absolve them from any duty which they were under before; and, therefore, if other precautions were necessary, the defendants were still bound to take them."

And in the same case it was held, that the question of negligence in these respects was one of fact, to be submitted to the jury, under all the circumstances of the case, and to be determined by them

upon their view of what skill and prudence and reasonable care and diligence require.

And in *Shaw* v. *Boston & Worcester R. R. Corp. ubi supra*, it was decided that the record of the county commissioners, stating that in their opinion no flagman was necessary at the crossing, was not competent to show due care on the part of the company, when that precaution had been omitted.

Judge Redfield, in his treatise on the Law of Railways, vol. 1, p. 547, *in notis*, after stating a Massachusetts decision, to the effect that it is not competent for the judge to lay down any definite rule as to the duty of the company in regard to proper precautions in crossing highways, that the circumstances attending such crossings are so infinitely diversified, that it must be left to the jury to determine what is proper care and diligence in such case, remarks as follows: " This, we apprehend, is the true rule upon that subject, both as to the company, and travelers upon the highway, and that it will finally prevail, notwithstanding occasional attempts to simplify the matter by definitions."

6. The defendants insist that any instruction authorizing or permitting the jury to find them guilty of negligence, in not having their engine flagged at the crossing, even if tenable as against the P. S. & P. Railroad, who had employed a flagman, and kept up a flag station, and thereby perhaps induced Webb to rely upon the flag, and to be misled by the omission of the warning, is not tenable as against these defendants, because they never employed a flagman. This argument assumes that the P. S. & P. R. R. Co. could be held liable for the omission only on the ground of their having misled the party injured, by their previous practice ; but we think that upon the evidence in the case, the jury would be amply justified in finding that the omission of some such precaution in such a locality, is proof of a want of ordinary care, without regard to the previous practice of the corporation.

And we are clear that a railroad company, when using the track and easement of another similar corporation for the purpose of running their own engine and cars, with their own employees, must

Webb *v.* Portland & Kennebec Railroad Company.

be held to observe such precautions for the safety of the public at a crossing, as shall be fully equivalent to those which are required in the exercise of reasonable care and prudence at the hands of the corporation whose road they are using. An omission which would constitute actionable negligence in the proprietor of the track, is equally culpable in any party that is using the track for the same purpose. If they choose to omit such reasonable precautions, they assume the risk, and must abide the consequences of so doing.

7. Finally, it is claimed that the employment of a flagman, to give warning of approaching trains, was an assertion of the paramount right of the railroad, and that it was misconstrued by the presiding judge into a fact, from which the jury might infer an assent on the part of the railroad company, to the dedication and use of the land as a highway. We do not see any error in the use which the jury were allowed to make of the fact. The establishment of a flag station cannot reasonably be construed as an assertion of a paramount right on the part of the railroad company.

On the contrary, it is the well-known and well-understood safeguard adopted by prudent and properly conducted railroad corporations, at the crossings of recognized highways which are much frequented, and the exhibition of the flag is but a notice that they are about to exercise the common privilege.

Upon the whole, we do not see that either law or justice requires us to send this case to a new trial.

*Motion and exceptions overruled.*

APPLETON, C. J.; CUTTING, DICKERSON, DANFORTH, and TAPLEY, JJ., concurred.