## PIERCE *v.* CONCORD RAILROAD.

Where one railroad corporation operates and controls the railroad of another corporation under a lease or a contract which is equivalent to a lease, the lessee corporation becomes the " proprietor" of the leased railroad, by virtue of General Statutes, chapter 145, section 1, and is liable under General Statutes, chapter 148, section 8, for damage accruing by fire or steam from a locomotive run by said lessee corporation upon the track of the leased railroad.

CASE, under the statutes, by Joseph B. Pierce against the Concord Railroad Corporation, to recover for certain property destroyed by fire from a locomotive of the defendants. For the purposes of this case, it was agreed that the plaintiff was the owner of certain property described in the writ, situate on the line of the Concord & Portsmouth Railroad, in Manchester ; that said property was destroyed by fire from a locomotive of the defendants, running upon the Concord & Portsmouth track, Sept. 7, 1870 ; that said Concord & Portsmouth Railroad is operated and controlled by the defendants, under a contract between said defendants and Concord & Portsmouth Railroad, dated May 26, 1862, for ninety-nine years, in which it is stipulated, among other things, that "the Concord Railroad shall operate and maintain the Concord & Portsmouth Railroad during the continuance of this agreement, and of any renewal thereof, in all respects as said Concord & Portsmouth Railroad is by law required to do ; shall pay all taxes duly assessed against said corporation, and shall indemnify and save harmless the said Concord & Portsmouth Railroad from any and all claims for damages on account of anything connected with the proper care, repairs, and operation of said road," and shall pay from the entire earnings of the road $500 thereof to the treasurer of said C. & P. R. R., and to the stockholders thereof $24,500 ; and in said contract each party reserved to itself all of its chartered rights and liabilities, and the power to sue, and liability to be sued, &c.

The defendants claimed, upon the foregoing facts, that they were not and are not the proprietors of the Concord & Portsmouth Rail-

road, within the meaning of the statute under which the action is brought.

The parties agreed that if in the opinion of the court this action cannot be maintained, judgment should be rendered for the defendants; but if it can be maintained, this case should be discharged, and the action stand for trial by jury; and the questions arising were reserved.

*Little, Morrison, Stanley & Hiland*, for the plaintiff.

*Marshall & Chase*, for the defendants.

BELLOWS, C. J.   This suit is based upon section 8 of chapter 148 of the General Statutes, which provides that " the proprietors of every railroad shall be liable for all damages which shall accrue to any person or property by fire or steam from any locomotive or other engine on such road;" and the question is, whether the defendant corporation is to be regarded as the proprietor of the Concord & Portsmouth Railroad, within the meaning of that provision, it appearing that the latter railroad is operated and controlled by the Concord Railroad, under a lease for ninety-nine years.

By section 1 of chapter 145, the term proprietors of a railroad is defined to " include the corporation to which any railroad was originally granted, or into whose hands it has subsequently passed, the assignees or trustees to whom any railroad has been mortgaged for the security of debts, and any company or persons to whom it may have been conveyed;" and the question arises, whether the Concord & Portsmouth Railroad has passed into the hands of the Concord Railroad, or has been conveyed to it, within the meaning of those provisions.

There is nothing in this section from which it can be inferred that a transfer of the absolute title is essential to make a company the proprietor of a railroad.   On the contrary, it is quite clear that such absolute title is not essential, inasmuch as mortgagees are expressly included.

It is equally clear, we think, that by a lease for ninety-nine years the railroad passes into the hands of the lessees, within the meaning of this section.   There is certainly nothing in those terms that implies the vesting of the entire title, and there is nothing in the nature of the case that would suggest the necessity of such a transfer.

The liability of the proprietors of a railroad for injuries caused by its operation is deduced from the duty it owes to the public and to all persons who may come within its influence; and it is manifest that the lessees of such road, who are in possession of it, and operating and controlling it as owners and receiving its revenues, have the same duty to the public, in respect to care and diligence, as the original proprietors.   The lessees alone engage and control the persons who manage the road, and it would be altogether anomalous to allow them to avoid all responsibilities for the negligence of their servants, by alleging that at the end of ninety-nine years their title would terminate.

Upon general principles, and independent of all statute regulations, such lessees would be liable for injuries caused by their negligence or the negligence of their servants ; and it is inconceivable that the legislature could have designed to take away or diminish that liability, on the ground that the title of the lessees was not absolute.

Judge REDFIELD, in vol. 1 of his work on Railways, 4th ed., 610, says,—" It seems to be regarded as settled, that the persons or corporations who come into the use of a railway company's powers and privileges are liable for their own acts while continuing such use, and also for the continuation permissively of any wrong which had been perpetrated by such company upon land-owners or others, by means of permanent erections, which still remain in the use of their successors."

In accordance with that view is the doctrine of *Sprague* v. *Smith*, 29 Vt. 421. There, Smith and two others were trustees of the first mortgage bonds of the Vermont Central Railroad Company, and, as such, took possession of the railroad on the first day of July, 1852, and occupied and operated it until after December, 1852; and during that time the injury complained of happened to freight in the cars of the Central Railroad, while on the Northern (N. H.) Railroad.

The court, per REDFIELD, C. J., held it to be well settled in practice and by repeated decisions, that the lessees of railroads are liable to the same extent as the lessors would have been while they continue to operate the road ; and he also holds that there could be no doubt that an intruder into the franchise of a railway corporation would be liable while conducting the business in the same way, and that he could not allege his own wrong in his defence ; and the court hold that these trustees, being the ostensible parties who appear to the public to be exercising the franchise of the corporation, would be also liable ; but it was held that they were not liable for an injury on the Northern Railroad, caused by the negligence of servants of that road, over whom the defendants had no control.

So in *Blumenthal* v. *Brainerd*, 38 Vt. 402, it was held that receivers of a railroad corporation, appointed by the court of chancery, while operating the road as common carriers, are liable as such to passengers and freight owners.

In *Linfield* v. *Old Colony Railroad*, 10 C. 562, it was held that the defendants, who were constructing the r l under a lease from the original corporation, were liable for damages aused by omitting to ring a bell at a crossing while running a gravel train, as required by the statute, — and also for other negligence. The statute required every railroad corporation to place a bell on each locomotive on *their road*, to be rung at every crossing of a highway at grade ; and the court held that the railroad which was leased to the defendants was " their road," within the just meaning of that section.

In *Webb* v. *The Portland & Kennebec Railroad Co.*, 57 Maine 128, where defendants used with their cars and engines the railroad track of another company with their assent, it was held that this was the defendants' track *pro hac vice*, and therefore there was no variance.

The cases indeed are very numerous where one railroad has been held liable for injuries to goods which it had undertaken to transport, although the injuries happened upon another road with which it had a business connection. *Nashua Lock Company* v. *Worcester & Nashua R. R. Co.*, 48 N. H. 339, and cases cited. So is 2 Redfield on Railways 275. These cases fully sustain the position that, independent of the statute, one railroad company, while using the track of another as a common carrier, is liable for injuries caused by its own negligence, even where the use is temporary and not exclusive. So in *McCluer* v. *Manchester & Lawrence Railroad*, 13 Gray 124, where the defendants had leased of the Boston & Maine Railroad the Methuen Branch, and run it in connection with their own road, it was held that the defendants were liable for goods brought to the depot at Lawrence to be transported over the Methuen Branch and the defendants' road,—the goods having been burned at the Lawrence depot after they were delivered to their agent.

In *Barter* v. *Wheeler*, 49 N. H. 9, where the defendants held and occupied a railroad as trustees under a mortgage for the benefit of bondholders, and the mortgage had been foreclosed and the railroad sold and bid in by the trustees for the bondholders, it was decided that the defendants were liable for the loss of goods while they were so in possession and operating the road as common carriers.

In *Murch* v. *The Concord Railroad Co.*, 29 N. H. 35, BELL, J., says,— " By using the railroad of another corporation as a part of their track, whether by contract or mere permission, they would ordinarily, for many purposes, make it their own, and would assume towards those whom they had agreed to receive as passengers all the duties resulting from that relation as to the road, and there would be no privity between such passenger and the proprietors of the road so used."

In view of the authorities, we have no difficulty in holding that, under a lease like the one here, the Concord & Portsmouth Railroad had passed into the hands of the lessees, within the meaning of the provision in question.

It may perhaps be urged that the present case differs from the ordinary cases of injuries arising from negligence, inasmuch as the railroad is made liable whether negligence is shown or not.

But we think that can make no difference in the liability of these lessees. The running of the locomotive was their act, and it was voluntary: without proper precautions it endangered the safety of property along the line, and if they chose to run locomotives in such condition as to expose the property of the others to destruction, it was proper, in the estimation of the law-makers, that they should do it at the risk of being obliged to make full indemnity,—assuming, as is probable, that in running such an engine there was necessarily a want of due care.

It is urged by the defendants' counsel, that, to hold the defendants, the court must find that the Concord & Portsmouth Railroad had authority to sell and convey all its corporate rights and property, and did

so sell and convey ; but for the reasons assigned we cannot concur in this view. Besides, we are inclined to think that a lease may be regarded as a *conveyance*, within the meaning of the other clause of this section. In the ordinary understanding of the term, a conveyance includes a lease, which may confer a freehold; and there is nothing in the nature of the case which would limit the term to an estate in fee.

In 2 Black. Com. 302, it is laid down that original conveyances are the following : 1. Feoffment. 2. Gift. 3. Grant. 4. Lease. 5. Exchange. 6. Partition. These are all classed by him as conveyances at common law : so it is said, on page 317, that a lease is properly a conveyance of lands for life, years, or at will.

We are therefore of the opinion that an action of the kind described can be sustained against these defendants.

*Case discharged.*