Línea Borinquen, Inc., demandante, apelante y apelada, *v.* Fajardo Development Co. y American Railroad Company of Porto Rico, demandadas, apeladas y apelante la última.

Núm. 7271.—*Sometido:* Junio 2, 1937. *Resuelto:* Junio 7, 1938.

*Susoni & Defendini,* abogados de la apelante y apelada; *Mariano Acosta Velarde,* abogado de la apelada y apelante; *Jaime Sifre Jr.,* y *A. Ortiz Toro,* abogados de la Fajardo Development Co.

El Juez Asociado Señor Wolf emitió la opinión del tribunal.

La demandante, Línea Borinquen, Inc., instó demanda contra la Fajardo Development Co. y la American Railroad Co. of P. R. para recobrar daños y perjuicios por la suma de $1,914.40. Estos daños y perjuicios se alegó que resultaron de un choque habido entre una guagua con licencia núm. P–1385, perteneciente a la demandante, y un tren perteneciente a la American Railroad Co. of P. R. que discurría por rieles de que la Fajardo Development Co. era dueña.

La corte de distrito resolvió que la evidencia demostraba que la Fajardo Development Co. era dueña del tren que corría entre Carolina y Naguabo; que en 30 de diciembre de 1931, la American Railroad Co. of P. R. celebró un contrato con la aludida Fajardo Development Co. que fué más tarde aprobado por la Comisión de Servicio Público en 6 de abril de 1932; que a virtud de este contrato cada una de las compañías convino en permitir a la otra el uso de sus rieles para el tránsito de sus respectivos trenes; que el accidente ocurrió el 17 de septiembre de 1932; que la American Railroad Co., como dueña y explotadora de la locomotora núm. 87 fué responsable del accidente ocurrido por la negligencia de Angel Sánchez, maquinista de la locomotora y por la negligencia del guardabarrera, que no estaba presente en el momento en que ocurrió el mismo; al no haber colocado las cadenas de un lado a otro de la carretera, ni haber hecho señales con una bandera roja, según era costumbre, para detener el tránsito por la carretera en el paso a nivel; que el chófer redujo la velocidad antes de llegar al paso a nivel y no habiendo oído ningún aviso de la proximidad de la máquina, cruzó la vía y fué arrollado por la locomotora; que no hubo prueba de negligencia contribuyente por parte del chófer; que la locomotora chocó con el lado izquierdo de la guagua y la lanzó contra un poste de la luz

eléctrica, averiándola por ambos lados; que la guagua había sido vendida por Pedro A. Pizá, mediante un contrato de venta condicional, a la Línea Borinquen Inc., representada por A. S. Robles, por la suma de $1,630 en noviembre de 1931; que la caja de dicha guagua después del accidente quedó enteramente destrozada; que el valor de dicha caja era $600, y que los daños causados al *chassis* ascendían a $177.40.

La corte inferior resolvió que la demandante no había probado suficientemente los ingresos diarios obtenidos con dicha guagua ni los gastos incurridos en la explotación de la misma, tales como gasolina, aceite y sueldo del chófer, y por tanto no concedió ninguna indemnización por la pérdida de los servicios de la guagua durante los 94 días.

A base de estas conclusiones la Corte de Distrito declaró sin lugar la demanda en cuanto a la Fajardo Development Co. y dictó sentencia a favor de la demandante y contra la American Railroad Co. of P. R., y fijó los daños y perjuicios en la suma de $777.40, sin costas.

La Línea Borinquen, Inc. radicó una moción de reconsideración de sentencia, alegando que toda vez que la corte había llegado a la conclusión de que el accidente se debió en parte a la negligencia del guardabarrera, que era empleado de la Fajardo Development Co., la sentencia debió haberse dictado solidariamente contra la American Railroad Co. of P. R. y la Fajardo Development Co. La demandante también solicitó de la corte reconsiderara su sentencia en lo relativo a costas, alegando que las demandadas habían sido temerarias en extremo en sus esfuerzos de evadir sus responsabilidades en este caso y que por tanto debían concederse costas a la demandante. La corte declaró sin lugar la moción de reconsideración con fecha 26 de octubre de 1935 y el mismo día la American Railroad Co. of P. R. radicó su escrito de apelación contra la sentencia. En 7 de mayo de 1936 la American Railroad Co. of P. R. y la Línea Borinquen, Inc., firmaron una estipulación en que convenían: (1)

que la demandante, Línea Borinquen, Inc., se acoja a la transcripción de evidencia y a la transcripción del récord radicados por la demandada, American Railroad Co. of P. R., a los fines de la presente apelación; (2) que el recurso de la demandante y el de la demandada American Railroad Co. of P. R. se tramiten como un solo caso y bajo un solo número; (3) que al récord de la American Railroad Co. of P. R. se agregue el escrito de apelación radicado por la demandante en la Corte de Distrito de San Juan (copia de dicho escrito de apelación certificada por el Secretario de la Corte de Distrito de San Juan fué unida a dicha estipulación y se hizo formar parte de la misma); y (4) que se tenga por perfeccionado y radicado el recurso de apelación de la demandante en este caso desde la fecha en que se aprobare la presente estipulación. Ésta fué aprobada por este Tribunal el mismo día.

La Fajardo Development Co. sostiene en su alegato que este tribunal no tiene jurisdicción, por dos motivos: (1) porque la sentencia de la Corte de Distrito de San Juan fué firme antes de que la Línea Borinquen radicara su escrito de apelación, y (2) porque la Línea Borinquen, Inc., debió haber apelado de la resolución final de la corte inferior.

Al argüir el primer punto la Fajardo Development Co., aunque reconoce que este tribunal ha seguido el precedente establecido por la Corte de Circuito de Boston en los casos de *Saurí* v. *Saurí,* 45 F. (2d) 90 y *Díaz* v. *Pérez,* 54 F. (2d) 588, al efecto de que una moción para reconsiderar suspende el término de treinta días para apelar, alega que en este caso específico la moción de reconsideración se dirigía meramente a ciertos aspectos de la sentencia y no a la sentencia en su totalidad, y que, por tanto, dicha regla no es aplicable. En un caso más reciente que los citados por la apelada (*Wayne Gas Co.* v. *Owens-Illinois Co.,* 300 U. S. 131), la Corte Suprema de los Estados Unidos resolvió que una reconsideración, aunque la corte se ratifique en su actuación anterior y se niegue a dictar un decreto distinto al

original, es apelable y que el término para apelar empieza a correr desde la fecha en que se dicte tal decreto. La contención de la apelada de que la reconsideración debe dirigirse contra la sentencia en su totalidad, y no meramente contra parte de la misma, es insostenible.

En lo que respecta al segundo punto es evidente que la Línea Borinquen, Inc., apeló específicamente de la sentencia de septiembre 23, 1935, y en armonía con el razonamiento anterior no era necesaria ninguna otra apelación.

Aun si las contenciones de la Fajardo Development Co. fueran correctas, ello surtiría muy poco efecto sobre el recurso de apelación, toda vez que la American Railroad Co. of P. R. apeló de la sentencia de la corte de distrito y alegó, entre otros errores propios, más o menos los mismos señalados por la Línea Borinquen, Inc.

La American Railroad Co. of P. R. alega que la corte de distrito cometió cuatro errores, a saber:

"1. La corte de distrito de San Juan cometió manifiesto error de hecho y de derecho al dictar sentencia en contra de The American Railroad Co. of P. R. por el fundamento de que el guardabarrera Adolfo Torréns no se encontraba en el cruce, dejando de poner las cadenas y de hacer señales con banderas rojas.

"2. La Corte de Distrito de San Juan cometió manifiesto error de derecho al dictar sentencia contra The American Railroad Co. of P. R. y sostener que la negligencia del guardabarrera Adolfo Torréns, empleado de The Fajardo Development Company, era atribuíble e imputable a The American Railroad Company of Porto Rico.

"3. La Corte de Distrito de San Juan cometió manifiesto error de hecho y de derecho, al dictar sentencia a favor de la demandante apelada y en contra de la apelante, porque según el peso y la preponderancia de la prueba, The American Railroad Company of Porto Rico, no fué culpable de negligencia alguna.

"4. La Corte de Distrito de San Juan cometió manifiesto error de hecho y de derecho al dictar sentencia en contra de la demandada apelante, porque según el peso y la preponderancia de la prueba, la demandante fué culpable de negligencia contributoria, siendo ésta la causa próxima e inmediata del accidente."

La Línea Borinquen, Inc., imputa tres errores a la corte de distrito, como sigue:

"1. La Corte de Distrito de San Juan cometió manifiesto error de derecho al sostener que la negligencia del guardabarrera Adolfo Torréns, empleado de The Fajardo Development Co., era atribuíble e imputable exclusivamente a The American Railroad Co. of P. R.

"2. La Corte de Distrito de San Juan cometió error manifiesto al exonerar a The Fajardo Development Co. de toda responsabilidad para con la demandante y dictar sentencia tan sólo contra la demandada The American Railroad Co. of P. R.

"3. La Corte de Distrito de San Juan cometió manifiesto error al no conceder indemnización por concepto de costas, gastos y honorarios de abogado a la demandante."

Los errores primero y segundo señalados por la American Railroad Co. of P. R. y los señalamientos primero y segundo alegados por la Línea Borinquen, Inc., se dirigen todos más o menos a una sola cuestión, o por lo menos a varios aspectos de la misma cuestión. El primer señalamiento de la American Railroad Co. se basa en la conclusión de la corte de distrito de que el guardabarrera no se hallaba en el paso a nivel en el momento del accidente y en que no colocó las cadenas de un lado a otro de la carretera ni hizo ninguna señal para advertir a los transeúntes de la proximidad del tren. En lo que se refiere a la cuestión de si esta conclusión es o no correcta, este Tribunal no la considerará, a no ser para decir que se adujo suficiente prueba para sostener tal resolución.

En su segundo señalamiento la American Roailroad Co. of P. R. alega que la negligencia del guardabarrera, en la forma determinada por la corte de distrito, no podía atribuírsele a la American Railroad Co. La Línea Borinquen, Inc., por el contrario, alega que la corte de distrito cometió error al atribuir la negligencia del guardabarrera exclusivamente a la American Railroad Co. of P. R., y en su segundo señalamiento sostiene que la Fajardo Development Co. no debió haber sido exonerada de toda responsabilidad,

puesto que la corte de distrito resolvió que su empleado, o sea el guardabarrera, había sido negligente.

Según el párrafo *q,* sección 3, Capítulo II de la Ley núm. 70 de 1917, tomo 2, págs. 433, 449, las compañías de ferrocarril deberán conservar "cadenas, portones u otros aparatos adecuados de protección en todos los cruces a nivel de las carreteras públicas insulares."

En 52 Corpus Juris 202, se sienta la regla del modo siguiente:

"Algunos estatutos exigen a las compañías ferroviarias que tengan guardabarreras o portones en ciertos cruces a nivel, y el dejar de cumplir con el estatuto es negligencia *per se.*"

Por tanto, en este caso no puede haber duda alguna de la negligencia del guardabarrera, y la cuestión que ahora surge es si únicamente la dueña de la vía es responsable, conforme alega la American Railroad Co., o si tan sólo la American Railroad Co. lo era, según resolvió la corte de distrito, o si ambas compañías son responsables conforme alegó la Línea Borinquen, Inc.

En lo que a esta cuestión se refiere, en 51 C. J. 1104, hallamos la regla expuesta del siguiente modo:

"Una compañía de ferrocarriles que utiliza las vías de otra deberá ejercer el mismo grado de cuidado en su uso que si fuera dueña de las mismas. Está regida, en lo que a la cuestión de responsabilidad por negligencia se refiere, por la misma ley que obliga a la dueña.

"   .   .   .   .   .   .   .   .   .

"La compañía ferroviaria que usa las vías de otra no es responsable de los daños ocasionados únicamente por la negligencia de los empleados de la compañía que es dueña de las vías al explotar los trenes de esa compañía, mas responderá de los daños y perjuicios ocasionados con el manejo de sus propios trenes debido a la negligencia de los sirvientes y empleados de la compañía que es dueña de los rieles, tales como guardabarrera en los cruces, en cuyos servicios descansa y los cuales adopta en vez de emplear otros propios para tales deberes."

El principio está sostenido especialmente por las citas que se hacen en la nota 95, al efecto de que una compañía ferroviaria que usa las vías de otra debe tener guardabarreras en los cruces en todo momento en que el no hacerlo así equivaldría a negligencia procesable por parte de la compañía que es dueña de las mismas. *Webb* v. *Portland, etc. Ry. Co.,* 57° Me. 117, *McGrath* v. *New York Central etc. Ry. Co.,* 63 N. Y. 522. Véase el sumario del caso de *Webb* v. *Portland, etc. Ry. Co.,* 57 Me. 117, según aparece en 41 Cent. Dig., Railroads, párr. 826, pág. 2487.

Y en 51 C. J. 1110, se dice, "cuando la negligencia concurrente de dos compañías ferroviarias o de la compañía ferroviaria y otra persona contribuye a un accidente, ambas son solidariamente responsables, y pueden ser demandadas conjuntamente, o, según se ha resuelto, pueden ser demandadas separadamente, y esto es así aunque la negligencia no se debiera a un acuerdo previo, y aunque las partes actuaran independientemente una de otra, y no hubiera negligencia en el cumplimiento del mismo deber común; tampoco es importante que una de las demandadas debiera tener para con la demandante mayor grado de cuidado que la otra. Cuando se ocasionan daños y perjuicios por un tren que al momento del accidente se halla bajo el dominio común de los sirvientes de dos o más compañías ferroviarias, o de sirvientes empleados por ambas conjuntamente, ambas compañías son mancomunada y solidariamente responsables, y la regla es ésta cuando el tren está siendo explotado por una compañía sobre las vías de otra." Véase también *Consolidated Ice Machine Co.* v. *Keifer,* 134 Ill. 481; 10 L.R.A, 696; 45 C. J. 896 y especialmente la nota 15.

En vista de lo anterior parece que la apelante, Línea Borinquen, Inc., está en lo cierto al sostener que ambas compañías son solidariamente responsables y que esto es así sin considerar si hubo o no negligencia alguna por parte de la American Railroad Company en la explotación de su tren.

La American Railroad Co. of P. R. alega que la corte de distrito erró al dictar sentencia en su contra, toda vez que la preponderancia de la prueba demostró que la American Railroad Co. of P. R. no fué culpable de negligencia alguna. Conforme ya hemos dicho al discutir los señalamientos primero y segundo de la American Railroad Co., esta compañía era también responsable de la negligencia de la Fajardo Development Co. La corte de distrito, en lo que respecta a la negligencia de la American Railroad Co. of P. R., resolvió lo siguiente:

"El accidente ocurrió como se alega en la demanda, el 17 de septiembre de 1932, siendo responsable del mismo The American Railroad Company of Porto Rico como dueña y operadora del tren o locomotora Núm. 87, de carga y pasajeros, que causó el daño, por la negligencia de su maquinista Ángel Sánchez. . . . El chófer detuvo la marcha de su vehículo, reduciendo la velocidad, antes de llegar al paso a nivel, y no sintiendo aviso de la aproximación del tren, cruzó la vía cuando fué alcanzado por aquél."

Hubo prueba tendente a demostrar que la locomotora dejó de tocar pito o campana. La apelante American Railroad Company of P. R. no nos convence de que el juez de distrito no tuviera derecho a creer, por la preponderancia de la prueba, que ella fué negligente. Sin embargo, suponiendo la existencia del error, la sentencia podría no embargante ser confirmada debido a la negligencia del guardabarrera.

En su cuarto señalamiento la American Railroad Co. alega que según el peso y la preponderancia de la prueba, la línea Borinquen, Inc., fué culpable de negligencia contribuyente, que esa negligencia fué la causa próxima e inmediata del accidente, y que por tanto no debió haberse dictado sentencia contra la demandada American Railroad Company of Porto Rico.

La American Railroad Company basa su alegación de negligencia contribuyente en el hecho de que el conductor de la guagua no se detuvo por completo antes de cruzar

el paso a nivel.    En *García* v. *American Railroad Company of Porto Rico,* 45 D.P.R. 762, 769, se dijo lo siguiente:

"A nuestro juicio el caso de Goodman no debe interpretarse en el sentido de imponer al conductor de un vehículo de motor el deber de detenerse siempre al acercarse a una vía ferroviaria.    No parece razonable exigir invariablemente, en todos los casos, de un conductor, que se detenga por completo antes de llegar a la vía de un tren. La jurisprudencia general no sostiene tal criterio.    Háse dicho por un número de tribunales que una persona que se dispone a cruzar la vía de un ferrocarril, manejando un vehículo de motor, debe detenerse, mirar y tratar de escuchar, en un sitio desde donde pueda tender la vista a través de la vía, para ver si se aproxima algún tren.    Prevalece, sin embargo, la regla de que, como cuestión de derecho, no es éste un deber que se impone invariablemente al viajero. Las cuestiones en controversia no son siempre las mismas, los hechos varían, y, para juzgar la conducta de un viajero que no haya detenido su vehículo, hay que tener en cuenta las circunstancias que mediaron al acercarse al cruce, su ignorancia o conocimiento de la situación de la vía y la confianza que haya podido tener en sus oportunidades para ver y oír, a un lado y otro de esa vía.    Ya hemos dicho que cada caso tiene sus peculiaridades, sus rasgos característicos, su sello especial, su fisonomía propia, y que no sería empresa fácil impartir justicia si para apreciar qué hechos constituyen cuidado ordinario o negligencia tuviésemos que ajustarnos a reglas fijas e invariables.    *Rivera* v. *Central Pasto Viejo,* 44 D.P.R. 266 y 267. Para determinar si ha habido o no negligencia en un caso determinado debemos preguntarnos qué hubiera hecho una persona de razonable prudencia en igualdad de circunstancias.  No debemos esperar de la naturaleza humana más de lo que humanamente puede dar y no parece razonable exigir precauciones que no se adoptan en el curso ordinario de las actividades humanas, por más que estén justificadas cuando existe alguna razón especial que nos aconseje desplegarlas, velando por la seguridad ajena y por nuestra propia seguridad."

Reafirmando este mismo principio en *López* v. *American Railroad Co. of P. R.,* 50 D.P.R. 1, 26, este tribunal cita una decisión reciente de la Corte Suprema de los Estados Unidos al mismo efecto, a saber:

"La Corte Suprema de los Estados Unidos, en una opinión emitida con posterioridad, en 2 de abril de 1934, refiriéndose también al caso de Goodman, dijo, entre otras cosas, lo siguiente:

" 'Se hace necesario aclarar en estos momentos las sombras que puedan oscurecer el punto en controversia. No es nuestro ánimo investigar en estos momentos la existencia de un deber de parar independientemente de un deber de bajarse del vehículo y practicar un reconocimiento. Esta investigación, si la hiciéramos, nos haría penetrar en un espeso campo de decisiones, que están en conflicto. Algunas cortes aplican la llamada regla de Pennsylvania, e imponen un deber invariable de parar, como también de mirar y escuchar, sin parar mientes en que el cruce esté despejado o las vías a cada lado. (Citas.) Otras cortes, la mayoría, adoptan la regla de que el viajero debe mirar y escuchar, pero que la existencia del deber de parar depende de las circunstancias y por lo tanto general, si no invariablemente, de la opinión del jurado. (Citas.) El asunto ha tenido menos consideración en esta corte, pero en ninguna de sus opiniones aparece la indicación de que en todo cruce el deber de parar sea absoluto, independientemente del peligro. Ni aun en el caso de *B. & O. R. Co.* v. *Goodman,* supra, que va más. lejos que los primeros casos, puede encontrarse apoyo para dicha regla. Por el contrario, la opinión establece de un modo claro que el deber está condicionado por la presencia de impedimentos que hagan que la vista y el oído resulten inadecuados para la protección del viajero.' *Pokora* v. *Wabash Ry. Co.,* 292 U. S. 98, 102.

"La Corte Suprema se extiende en otras consideraciones y dice que la opinión en el caso de Goodman ha dado origen a confusiones en las cortes federales, habiendo recibido solamente un apoyo vacilante en las cortes estaduales, y termina con estas palabras: 'We limit it accordingly.' ''

En torno a esta misma cuestión, en *Ruberté* v. *American Railroad Co.,* 52 D.P.R. 164, 167, este tribunal decidió lo siguiente:

"Una persona que viaja por una carretera en un vehículo de motor no está, de ordinario, obligada a tomar el mismo cuidado al pasar por una de estas vías que aquél que cruza las vías regulares de la American Railroad Company. Las personas que transitan por las carreteras siempre están obligadas a tomar ciertas precauciones, mas no creemos que estén obligadas a pararse, mirar y oír cada vez que se acercan a una vía ferroviaria, especialmente si ésta no per-

tenece a una corporación de servicio público que puede usarla en cualquier momento. La intersección era un paso a nivel. En otras palabras, que las personas que transitan por la carretera, y desde luego aquéllas que vienen de Ponce, pueden ver una larga distancia hacia adelante.''

En vista de lo anterior, carece de mérito la alegación de la American Railroad Co. de que la corte de distrito cometió error al resolver que la demandante, Línea Borinquen, Inc., no fué culpable de negligencia contrituyente.

█ En su tercer señalamiento la Línea Borinquen, Inc., alega que la corte de distrito cometió error al no conceder suma alguna por concepto de costas, gastos y honorarios de abogado. En lo que a costas se refiere, parece que la corte de distrito actuó en el ejercicio de su discreción. El artículo 327 del Código de Enjuiciamiento Civil da a la corte de distrito discreción para conceder las costas, y basa esta discreción en el grado de temeridad de la parte demandada. En este caso la demandante solicitaba se le concedieran $1,914.40 y se dictó sentencia a su favor por la suma de $777.40. En otras palabras, la indemnización concedida fué menos de la mitad de la solicitada.

En *Martínez* v. *Padilla*, 19 D.P.R. 582, 584, al resolver esta cuestión, este tribunal dijo lo siguiente:

''El otro requisito que exige la ley para que pueda condenarse a pagar costas y honorarios de abogado es que, a juicio discrecional de la corte, haya habido culpabilidad en la parte condenada por la sentencia.

''La culpabilidad a que se refiere la ley equivale a la temeridad o mala fe que exigían nuestras leyes anteriores para la imposición de costas. Todas ellas son sinónimas, y, como ellas mismas expresan, significan la falta de razón en el demandante para establecer y sostener su acción y en el demandado para sus defensas. Así, pues, en tal sentido una persona es culpable, temeraria o de mala fe en un litigio, cuando no existe algo que justifique su acción o sus defensas. En consecuencia, según la constante jurisprudencia del Tribunal Supremo de España, no puede reputarse temerario, ni ser condenado en costas el demandado, cuando fuere denegada alguna parte de la

demanda, ni cuando su oposición a ella se estima justa, siquiera sea tan sólo en parte. Sentencias de 14 marzo y 4 de mayo de 1893."

En *Sucn. del Toro* v. *Zambrana,* 27 D.P.R. 488, 492, la decisión anterior fué sostenida, así:

"Por lo que toca a los honorarios de abogado no vemos que la corte inferior abusara de su discreción al no condenar al pago de ellos al demandado si tenemos en cuenta la diferencia que hay entre lo pedido en la demanda y lo concedido en la sentencia. *Martínez* v. *Padilla,* 19 D.P.R. 582."

Por tanto, se desprende que la corte de distrito no cometió error al no conceder las costas.

*Debe revocarse la sentencia de la corte de distrito en tanto en cuanto exonera a la Fajardo Development Co., y confirmarse en todos los demás aspectos.*