CHARLES BISHOP *vs.* CHICAGO, MILWAUKEE AND ST. PAUL RY. CO.

Opinion filed February 7th, 1895.

**Conflicting Evidence—Verdict Undisturbed.**

Where the evidence is conflicting upon a question of negligence, the verdict will not be set aside on the ground of the insufficiency of the evidence. Evidence examined, and *held*, the evidence being conflicting, that the verdict will not be set aside in this case upon such ground.

**Stock Killing—Private Crossing.**

In an action against a railroad company for negligently killing an animal at a private crossing, put in by the defendant for the plaintiff's use in passing from one part of his farm to another, the question of negligence is usually a question for the jury. *Held*, under the evidence in this case, that the question of negligence was properly submitted to the jury.

**Care Commensurate With Danger.**

A colt belonging to the plaintiff was turned loose to feed upon the plaintiff's land, and, while attempting to pass across the railroad track upon such crossing, was killed by defendant's cars. *Held: First*, that such animal was not, when killed, a trespassing animal, but was lawfully upon the crossing; *second*, that defendant in running its trains, was bound to exercise due care in approaching and passing over such private crossing, and is bound to anticipate that animals and persons may be rightfully upon its right-of-way at the point of crossing. The care must be commensurate with the danger reasonably to be apprehended at the point of intersection.

**Improper Evidence Favorable to Objecting Party.**

Certain testimony was allowed to go before the jury against defendant's objection thereto. Such evidence examined, and found to be wholly favorable to the defendant. *Held*, that, if the evidence was improperly admitted, the ruling admitting the same was error without prejudice.

**Evidence Withdrawn from Jury's Consideration.**

In its instructions to the jury the trial court pointed out certain testimony which had been admitted against defendant's objection thereto, and distinctly informed the jury that, for reasons which were stated, such testimony was withdrawn from the case, and must not be considered at all by the jury. *Held*, under the circumstances of this case, that the error, if error there was, in admitting such evidence, was cured by such instructions to the jury. Whether such withdrawal would cure the error in all cases not decided.

Appeal from District Court, Dickey County; *Lauder*, J.

Action by Charles Bishop against the Chicago, Milwaukee &

St. Paul Railway Company. Plaintiff had judgment and defendant appeals.

Affirmed.

*John H. Perry*, for appellant.
*James M. Austin*, for respondent.

WALLIN, C. J. This action was brought to recover damages. The averments of the complaint are, in substance, that the defendant negligently killed the plaintiff's colt, of the value of $100, by running one of its trains over said colt. Defendant answered the complaint, denying the negligence charged in the complaint, and admitting the killing, and the value of the colt, as stated in the complaint. Certain concomitant facts are uncontroverted, and may be stated as follows: It is conceded that defendant's railroad passes over and divides the plaintiff's farm. That plaintiff's house and stable are located about eight rods from the crossing hereafter mentioned, and upon the east side of the track. Upon the west side of the track a part of the plaintiff's land is cultivated, and upon the day of the killing certain of the plaintiff's straw stacks were standing about 40 rods from the track and crossing. Long prior to the killing, and at plaintiff's request therefor, the defendant had constructed a private crossing over its railroad for plaintiff's use, and to enable the plaintiff to pass and repass and to drive his stock from one part of his land to another; and others besides the plaintiff were in the habit of driving over such crossing. The colt in question was killed upon the crossing, and when killed was in the act of running from the west to the east side of the track. The colt was killed some time near the middle of the day. In the morning of that day the plaintiff's horses, several in number, including the colt, were let out of the plaintiff's stable, and turned loose by the plaintiff. The horses were turned loose to enable them to cross over the railroad and feed near the stacks on the west side of the track, upon wheat which had been left uncut. As has been seen, the answer admitted the killing, and the alleged value of the colt.

Such admissions, under § 5501, Comp. Laws, operated to make out a case of constructive negligence against the railroad company. *Hodgins* v. *Railroad Co.*, 3 N. D. 382, 56 N. W. 139. To rebut the *prima facie* case so made out the defendant put the engineer and fireman who were managing the engine which did the killing upon the stand as witnesses. Their testimony was substantially the same upon vital points, and was to the effect that the danger of the colt was first discovered by the engineer at a time when the train was approximately distant from the crossing between 300 and 400 feet, and was moving at the rate of 20 or 25 miles an hour towards the crossing. The distance of the colt from the crossing when its peril was first discovered by the engineer was, according to the testimony of the engineer and fireman, between two and three hundred feet. The train consisted of the engine and three cars, one of which was a passenger car. The train was behind time, and running faster than usual. The engineer testified: "Immediately on discovering the peril of the animal, I reversed the engine, and blew the alarm signal, and done all that might be done to stop the engine on my part, before I struck the animal. I did this immediately on discovering the danger of the animal. * * * As soon as I saw the animal, I reversed the engine; that is, to give it the full pressure on the front end,—that is to stop the engine just as quick as you can. I sounded the alarm, and tried to stop just as quick as you can. The train was running on a forward motion at the time: I reversed the engine, and pulled the throttle wide open. I pulled the throttle clear out, so as to give the full pressure of the boiler on the back motion. That has the effect of stopping the train. * * * I have been in the railroad business quite a number of years. The train could not be stopped between the time I first discovered the animal and the time of striking it. * * * The animal was running quite fast." The fireman testified: "I rang the bell after the engineer gave the alarm to set brakes. He gave several blasts of the whistle. I rang the bell after he gave the alarm. I rang the bell until after we crossed the crossing;

until after we struck the horse. The animal when I first discovered it, was from 100 to 300 feet from the track. The animal was opposite the crossing. It was running like, on the gallop, towards the track at the crossing. At the time, we were from 200 to 300 feet from the crossing." The testimony of the engineer and firemen apparently made out a case tending strongly to show due care in operating the train at and just before the colt was struck by the train, but the plaintiff put upon the stand a number of witnesses whose testimony bears directly upon the question of due care. It will serve no good purpose to reproduce the plaintiff's testimony here. It must suffice to say that there was a conflict of evidence as to the time when the engineer discovered the peril of the colt, as evidenced by the ringing of the bell; also a conflict as to when the alarm whistle first sounded to scare the colt away from the track; also as to whether or not the engine was reversed at all, as testified to by the engineer. There being a conflict in the evidence upon these features of the principal question at issue,—the question of negligence,—we are clear that the trial court did not err in denying the motion to direct a verdict for the defendant. Negligence, except in the case of constructive negligence arising upon the statute above cited, is generally, and almost always, a question of pure fact. Where the evidence is conflicting, it becomes the province of the jury to consider the evidence, and determine the facts from the evidence. There being conflicting evidence in this case upon the question of negligence, the point that the verdict is not supported by the evidence, which is also assigned as error, must be overruled.

The charge of the learned trial court was pertinent to the facts in issue, and no exception was taken thereto. We are unable to see wherein the jury disregarded the law as laid down to them in the court's charge. Hence the error assigned by the defendant, that the verdict is "against law," must be overruled. Among other things, the court instructed the jury as follows: "In cases of crossings where persons have a right to be on the railroad track, it is the duty of the railway company to keep a more care-

ful lookout, take greater pains, exercise greater precaution, to avoid the injury; and therefore, if you find from this case that the the animal was killed on the crossing, and the animal was using the crossing for the purpose of passing back to Mr. Bishop's barn, then you will require of the railway company greater caution than if the animal was a mere trespasser. I will instruct you further: That even upon the crossing the railway company has the better right to use the track. The right of the railway company is a superior right. A person who has a private crossing over railroad tracks, and he is aware of the times when trains pass, in using the crossing for the purpose of driving stock back and forth there is a duty also upon him to take care that his stock does not interfere with the trains, and he must do the best he can to guard against injury." These instructions, we think, state the law correctly. The colt, when killed, could not be regarded as a trespassing animal, nor were the plaintiff's horses unlawfully at large. It follows that the train men, in approaching the crossing, were not at liberty to assume in advance that animals would not be upon its tracks at the crossing. On the contrary, the fact that they were approaching a crossing devolved upon the men in charge of the train the duty of keeping a special lookout to avoid a collision with persons or animals that might be lawfully upon such crossing. The care should be commensurate with the danger to be reasonably apprehended. This general rule imposes upon railroads the duty of exercising exceptional care at all crossings, because upon a crossing there is a greater reason than at other places to apprehend danger from collisions with persons and domestic animals. The rule that no duty is laid upon train-men to anticipate that a trespassing animal will come upon the track, as laid down in *Palmer* v. *Railroad Co.*, (Minn.) 33 N. W. 707, and cited by defendant's counsel, does not apply to the facts in this record. See 4 Am. & Eng. Enc. Law, pp. 915, 916, and authorities cited. Whether a railroad company exercises due care in approaching a private crossing is usually a question of fact for the jury. Id.

Against defendant's objection, the following question was asked the engineer on cross-examination: "You were keeping a good lookout?" The witness answered, "Yes sir." The ruling on the admission of this testimony is assigned as error. We are clear that the question was properly asked. It was clearly competent, as bearing upon the question of due care in approaching a private crossing, where the danger of collision with persons and animals was enhanced. But, if the question had been improper, the testimony elicited but was wholly favorable to the defendant, and was therefore entirely nonprejudicial. The engineer was asked, "Was there any air brakes upon this train at the time?" and answered, "There was not." He was then asked, "If there had been air brakes on this train at that time, in what distance could you have stopped the train?" The witness answered, "About 400 feet." This testimony was objected to on the grounds that it was immaterial and irrelevant to the issues in the case. The issue being tried was that of negligence or want of due care in operating the train which caused the injury. We think it was proper to show what the appliances for controlling the train were, and whether such appliances were in common use, and were promptly and efficiently set in motion to control the train as soon as the danger was discovered. It would be true also that the defendant could properly show that air brakes which are used on some trains are not an appliance in common use on trains like that in question. If the latter fact should appear by the evidence, it would, of course, be the duty of the court to charge the jury that the absence of air brakes did not constitute negligence in operating the train in question. In the case before us, however, in the opinion of the trial court the evidence fell short of showing that air brakes were an appliance in common use upon trains like that in question, and accordingly withdrew from the consideration of the jury all the evidence relating to air brakes. The court instructed the jury as follows: "In the first place, gentlemen, I wish to say that all the testimony that has been offered here with reference to air brakes, and in reference to the distance in which a

train may be stopped with air brakes, is withdrawn. That is stricken out, and in determining your verdict you will not consider it. It is not in this case. You will consider this case as though no such testimony had been offered. Plaintiff's Counsel: The engineer of the company, as a witness in this case, showed that he was an expert, and also that the train might have been stopped in less time than with ordinary hand brakes. By the Court: The ruling of the court is based upon the ground that the testimony was not followed up by satisfactory evidence that the air brake is an appliance in common use. The court cannot take judicial notice that the air brake is an ordinary appliance in railroad management." This instruction, of course, was favorable to the defendant. The point does not involve the mere withdrawal of evidence by counsel. There is a conflict of authority as to whether the explicit withdrawal of evidence, when done by the court in charging the jury, will operate to cure an error which may be involved in its admission. *Prima facie*, and under the prevailing rule, such withdrawal does cure the error. Thomp. Trials, § § 723, 351, and cases cited in the notes. Also, Id. § 2354, and *State* v. *McGahey*, 3 N. D. 293, 55 N. W. 753. We think no inflexible rule need be laid down in this case. In the case under consderation the verdict has ample support in the evidence, aside from the evidence relating to air brakes which was withdrawn. We are of the opinion that under the circumstances existing in this case the admission of the evidence, followed by its subsequent withdrawal by the court, could not have operated to prejudice the substantial rights of the defendant.

Finding no prejudicial error in the record, the judgment will be affirmed. All concur.