ROBERT COULTER *vs.* GREAT NORTHERN RAILWAY CO.

Opinion filed June 5th, 1896.

**Pleading and Proof—Variance.**

There is no fatal variance between pleading and proof where the complaint alleges that plaintiff was injured through defendant's negligence at a crossing of the public highway over defendant's railroad track by being there struck by one of defendants engines, and the evidence shows that the highway was not legally laid out over defendant's right of way, but that defendant, by its acts and its acquiescence in the public use of the crossing as a public highway, had made such crossing a public highway as to the public, so that it was under the same obligations to take precautions against injuring persons or property at that point as would have rested on it had the highway been laid out in strict conformity with law.

**Railroad Crossing—Degree of Care.**

The statutory provision of the state regulating the ringing of the bell and blowing of the whistle on approaching a public crossing are not the sole measure of the duty of a railroad company to protect persons and property at public crossings. Nor do regulations embodied in ordinances passed by city councils under statutory authority, regulating the speed of trains and the giving of signals at public crossings within city limits, constitute the sole criteria of the care to be used by such corporations in the management of their trains. The common law obligation resting upon such corporations to use proper care in the operation of their trains to protect persons and property is not diminished by such statutory provisions or ordinances.

**Bill of Exceptions—Power to Settle After Appeal.**

The District Judge has power to settle a bill of exceptions after an appeal has been perfected, when the original record in the case is still in the Dictrict Court.

Appeal from District Court, Grand Forks County; *Templeton*, J.

Action by Robert Coulter against the Great Northern Railway Company. From a judgment for defendant, plaintiff appeals.

Reversed.

*Bangs & Fisk*, and *Tracy R. Bangs*, for appellant.

The crossing in question was a public crossing within the purview of section 2976 of the Revised Codes. *C. B. & Q. Ry. Co.* v. *Metcalf*, 28 L. R. A. 824; *C. & A. Ry. Co.* v. *Dillon*, 24 Ill. App. 203; *Missouri Pac. Ry. Co.* v. *Lee*, 7 S. W. Rep. 857; *Cranston* v. *N. Y. Cent. Ry. Co.*, 11 N. Y. Supp. 215, affirmed 26 N. E. Rep.

756; *Ewen* v. *C. & N. W. Ry. Co.*, 38 Wis. 633; *Missouri Pac. Ry. Co.* v. *Bridges*, 12 S. W. Rep. 210; *Texas & Pac. Ry. Co.* v. *Neill*, 30 S. W. Rep. 369; *Webb* v. *Ry. Co.*, 57 Me. 117; *Smedis* v. *Brooklyn & C. Ry. Co.*, 8 Am. and Eng. R. R. Cases, 450. Regardless of statute it is the duty of those having charge of trains to give notice of their approach at all points of known or reasonably apprehended danger. *C. & A. Ry. Co.* v. *Dillon*, 15 N. E. Rep. 182; *Kelly* v. *So. Minn. Ry. Co.*, 9 N. W. Rep. 588; *Webb* v. *Portland & K. Ry. Co.*, 57 Me. 117; *Lillstrom* v. *N. P. Ry. Co.*, 20 L. R. A. 587; *Bertelson* v. *C. M. & St. P. Ry. Co.*, 5 Dak. 313; *Phila. & C. R. Co.* v. *Troutman*, 6 Am. and Eng. Ry. Cases, 117. It is negligence for the railroad company not to so moderate the speed of its trains that the sound of the whistle or bell can be heard in time to give effectual warning to persons upon the street. Elliott on R. & S. 607; *Con. & C.* v. *Stead*, 95 U. S. 161; *Louisville Ry. Co.* v. *Com.*, 14 Am. and Eng. Ry. Cases, 613; 4 Am and Eng. Enc. L. 933; *Phila. & C. Ry. Co.* v. *Hagen*, 86 Am. Dec. 541. Care should be commensurate with the danger to be reasonably apprehended, and this rule imposes on railroads the duty of exercising exceptional care at all crossings, because upon the crossing there is a greater reason than at other places to apprehend danger from collisions with persons and domestic animals. *Bishop* v. *Railway Co.*, 4 N. D. 540; *Houston & T. C. Ry. Co.* v. *Boozer*, 8 S. W. Rep. 119. The defendant by constructing and maintaining the crossing held out an inducement to the public to use it. *Hanks* v. *Boston & A. Ry. Co.*, 18 N. E. Rep. 218. The question of contributory negligence is a question for the jury and not for the court. *Kellogg* v. *N. Y. Cent. & H. R. R. Co.*, 79 N. Y. 76; *Hanks* v. *Ry. Co.*, 18 N. E. Rep. 218. It is only when the inference of negligence or contributory negligence is necessarily deducible from the evidence and the circumstances proven, that a court is justified in taking a case from the jury. *Hoye* v. *Ry. Co.*, 62 Wis. 666; 19 Am. and Eng. Ry. Cases, 247; *Craig* v. *Ry. Co.*, 118 Mass. 431; *Greany* v. *Ry. Co.*, 101 N. Y. 419; 24 Am. and Eng. Ry. Cases, 473; 5 N. E. Rep. 425. Failure to

look and listen when an approaching train could not be seen is not contributory negligence. *Petty* v. *Hannibal & C. Ry. Co.,* 28 Am. and Eng. Ry. Cases, 618, 88 Mo. 306; *Hockford* v. *Ry. Co.,* 43 How. Pr. 222. It is for the jury to decide whether under the circumstances proven, plaintiffs failure to look and listen was such contributory negligence as to defeat his recovery. *C. I. Co.* v. *Stead,* 95 U. S. 161; *Hutchinson* v. *Ry. Co.* 32 Minn. 398; 21 N. W. Rep. 212; *Tyler* v. *Ry. Co.,* 137 Mass. 238; *Bower* v. *Ry. Co.,* 61 Wis. 457, 21 N. W. Rep. 536; *Funston* v. *Ry. Co.,* 61 Ia. 452, 16 N. W. Rep. 518; *Greany* v. *Ry. Co.,* 101 N. Y. 419, 5 N. E. Rep. 425; *Pearce* v. *Humphreys,* 34 Fed. Rep. 282.

*M. D. Grover* and *W. E. Dodge,* for respondent.

The trial court lost all power and jurisdiction over the subject matter of the controversy, and the controversy itself by the perfection of the appeal to the Supreme Court forty-two days prior to the alleged settlement and allowance of the statement of the case. Sections 5623, 5606, 5607, 5467, 5605, Rev. Codes; *Moore* v. *Booker,* 62 N. W. Rep. 607, 4 N. D. 543. When the appeal is perfected as provided by law the jurisdiction and control of the court below ceases, and no motion can be entertaind or discretionary act performed by the lower court during the pendency of the appeal. 1 Am. and Eng. Enc. L. 623; *Draper* v. *Davis,* 102 U. S. 370, 26 L. Ed. 121; *Keyser* v. *Farr,* 105 U. S. 265, 26 L. Ed. 1025; *Contes* v. *Wilkins,* 94 N. C. 174; *State* v. *Roland,* 36 La. Ann. 192; *Stone* v. *Spellman,* 16 Tex. 432; *Levi* v. *Carrick,* 15 Ia. 444. The plaintiff in his complaint did not claim the highway in question as a "street" under the statute but "another road." Section 3016, Comp. Laws; *Reynolds* v. *Great Northern Ry. Co.,* 69 Fed. Rep. 808. When a railway company is guilty of no act or omission other than such as is involved in the ordinary, usual, customary and legitimate operation and enjoyment of its property, and has violated no statutory requirement regulating or defining its duty, there is no actionable negligence. *Brown* v. *C. M. & St. P. Ry. Co.,* 22 Minn. 165; *Beisiegel* v. *N. Y. C. Ry. Co.,* 40 N. Y. 9;

*Bellefoutaine Ry. Co.* v. *Hunter*, 33 Ind. 335; *Lock* v. *Ry. Co.*, 15 Minn. 350. One who approaches a dangerous crossing where one or more of his senses are rendered useless or impaired by existing conditions as an obstruction of the view, atmosphere conditions, storms, smoke, and the like, is bound as a matter of law for his own protection, not only to look and listen but to stop before going upon the railroad track to ascertain at his peril whether or not a train is approaching. *Houghton* v. *Ry. Co.*, 58 N. W. Rep. 314; *Ry. Co.* v. *Crisman*, 34 Pac. Rep. 286; *Schaefert* v. *Ry. Co.*, 17 N. W. Rep. 893; *Seefeld* v. *Ry. Co.*, 35 N. W. Rep. 278; *Kelsey* v. *Ry. Co.*, 30 S. W. Rep. 339; *Jobe* v. *Ry. Co.*, 15 So. Rep. 129; *Ellis* v. *Ry. Co.*, 21 At. Rep. 140; *Littour* v. *Ry. Co.*, 61 Fed. Rep. 591; *Shufelt* v. *Flint*, 55 N. W. Rep. 1013; *Durbin* v. *Or. Nav. Co.*, 17 Pac. Rep. 5; *Fleming* v. *Ry. Co.*, 49 Cal. 253; *Dunning* v. *Bond*, 38 Fed. Rep. 814; *Reading & C. Ry. Co.* v. *Ritchie*, 102 Pa. St. 425. The general statute conferring upon the city council control and supervision over the streets of the city, the regulation of the speed of trains and the safety of the general public at railroad crossings of said streets confers upon the city council the exclusive right to legislate upon and control the subjects enumerated. The terms *"Public Highway"* and *"Street"* are not the same technically or in legal parlance. The general statutes over the subjects enumerated are *"pro tanto"* repealed. Hence, neither the general statutes nor the common law obtain with relation to those subjects. And in the absence of any allegation or proof of a violation or disregard by the defendant of any municipal regulation on the subjects;—no actionable negligence is pleaded or proven or liability established. *State* v. *Lippincott*, 31 At. Rep. 399; *Town of Keyport* v. *Cherry*, 51 N. J. L. 417, 18 At. Rep. 299; *Cherry* v. *Board of Com'rs*, 20 At. Rep. 970; *State* v. *Jones*, 18 Tex. 874; *Cowan's Case*, 1 Overton, (Tenn.) 311; *Indianapolis* v. *Croas*, 7 Ind. 9; *Lafayette* v. *Jenners*, 10 Ind. 74; *Clark* v. *Com.*, 14 Bush. (Ky.) 166; *State* v. *Morristown*, 33 N. J. Law, 57; *People* v. *Ry. Co.*, 118 Ill. 520; Elliot on Roads and Streets, 329; *Mobile & Ohio Ry. Co.* v. *State*, 51 Miss. 137, 141; *Cleaves* v. *Jordan*, 34 Me. 9.

Plaintiff having elected to class Ione avenue as a "public high-way ' and not as a "street" and all evidence tending to prove that it was a street having been seasonally objected to was properly disregarded. And had it been submitted to the jury the variance between proof and pleading would have been fatal to any verdict that might have been predicated thereon. *Hood* v. *Mfg. Co.*, 11 So. Rep. 10; *Harrold* v. *Jones*, 11 So. Rep. 747; *Ry. Co.* v. *George*, 10 So. Rep. 145; *Ry. Co.* v. *Hubbard*, 12 S. E. Rep. 1020; *Ry. Co.* v. *Mattox*, 13 So. Rep. 615; *Ry. Co.* v. *Thompkin*, 10 S. E. Rep. 356; *Derrigan* v. *Rutland*, 58 Vt. 128; *Ry. Co.* v. *Scott*, 27 S. W. Rep. 827; *Debolt* v. *Ry. Co.*, 27 S. W. Rep. 575; Shipman's Plead-ing, 417 and 423.

CORLISS, J. From a judgment in favor of the defendant, based upon a verdict directed by the court after the plaintiff had rested, the appeal was taken which brings this case before us. The action was for damages for personal injuries received by plaintiff by being struck by one of defendant's locomotives which was drawing a passenger train on defendant's road. The accident occurred at a public crossing in the City of Grand Forks, in this state. Plaintiff was driving a team upon one of the streets of that city, and as he was attempting to cross the railroad track at the point where such street was carried over the track a moving train collided with him, causing injuries which necessitated the amputation of one of his legs. The case developed by him on the trial was sufficient to sustain a verdict in his favor. It appeared that the defendant had recognized the crossing in question as the crossing of a public highway over its track. The street leading up to the defendant's right of way on each side thereof was known as "Ione Avenue." When originally laid out, it did not cross such right of way, but merely abutted thereon on either side. The reason for this was that the person who platted the land on which this avenue was laid out had no control over the defendant's right of way, which already had been established at that point. This plat was made in 1882. But there was evidence in the case tending to prove that Ione avenue had been graded over the

defendant's right of way the same as elsewhere, and that it had been used as a public thoroughfare for eight or ten years. It appeared that the street commissioner of Grand Forks City in 1890 and 1891 had done work on that portion of the street on defendants right of way leading up to the crossing, and that defendant had not interferred with such work, or in any manner objected to its being performed by the municipality in the exercise of its control over the public streets of the city. There was also testimony that men had been seen working on the crossing itself, and the inference that these men were in the employ of the defendant is fully justified by the evidence of the section foreman of that section of the road. He testified as follows: "Am about 30 years of age. Lived in Grand Forks 15 years. Have been in the employ of Great Northern Railway as section foreman. Know where Ione avenue, in City of Grand Forks, crosses tracks of the Great Northern Railway Company. That portion of the track was in my section as section foreman. As such foreman, and while in the employ of the Great Northern Railway Company, under direction of superior officers, I have repaired the railroad crossing at Ione avenue by putting in planks where they were worn out or broken, so as to make it passable for teams. The last time I repaired it was about four years ago. I worked on the road which I supposed was the Great Northern. That is the extent of my knowledge." It seems to be undisputed that for about three years there had been at this crossing a sign announcing that the place was a railroad crossing. There is no direct evidence that the defendant erected the sign board, but under the facts of the case the jury would have been justified in finding that this was the fact. It is evident from this brief review of the case proven by the plaintiff that the jury would have been warranted in reaching the conclusion that the defendant had invited the public to use this crossing the same as the crossing of a legally established highway over its track. To the traveler upon the highway the street at this point presented all the appearances of a lawfully established highway, and all these

appearances the jury would have been justified in finding that the defendant was responsible for. They might have found from the evidence that it had erected the usual sign board warning the public that there was a railroad crossing at that place; that it had put in and had kept in repair the necessary planking to enable vehicles to pass over the track, and that it had permitted the public to use for several years this crossing as though it was the crossing of a legally laid out highway over its right of way. Under these circumstances it owed to the plaintiff, at the time he was struck by its engine, the same duty of using ordinary care to protect him it would have owed him had the highway been legally established over its right of way at this point. *Kelly* v. *Railway Co.*, (Minn.) 9 N. W. 588; *Lillstrom* v. *Railway Co.*, 53 Minn. 464, 55 N. W. 624; *Railroad Co.* v. *Metcalf*, (Neb.) 63 N. W. 51; *Cranston* v. *Railroad Co.*, (Sup. Ct.) 11 N. Y. Supp. 215, ffirmed in 26 N. E. 756, by the court of appeals; *Railroad Co.* v. *Lee*, (Tex. Sup.) 7 S. W. 857; *Barry* v. *Railroad Co.*, 92 N. Y. 289; *Sweeny* v. *Railroad Co.*, 10 Allen, 368; *Taylor* v. *Canal Co.*, 113 Pa. St. 162-175, 8 Atl. 43; *Byrne* v. *Railroad Co.*, 104 N. Y. 362, 10 N. E. 539; 2 Shear. and R. Neg. § 464; 1 Thomp. Neg. 416; *Webb* v. *Railroad Co.*, 57 Me. 117. See, also, *Bishop* v. *Railway Co.*, 4 N. D. 540, 62 N. W. 605. We do not care to go so far in this case as to hold that the statute relating to the ringing of the bell or the blowing of the whistle at a railroad crossing applies to the case of a crossing where there is no legally established highway, but only a highway in fact. However, there is strong authority to support this view. See *Railway Co.* v. *Dillon*, (Ill. Sup.) 15 N. E. 182; *Id.*, 24 Ill. App. 203; *Railway Co.* v. *Metcalf*, (Neb.) 63 N. W. 51; *Railway Co.* v. *Lee*, (Tex. Sup.) 7 S. W. 857. But see *Reynolds* v. *Railway Co.*, 69 Fed. 808, 16 C. C. A. 435. All we are required to decide in this case is that the facts established by the plaintiff were sufficient to carry the case to the jury and sustain a finding by them that the defendant had failed to discharge to the plaintiff the common law duty of exercising ordinary care which it owed him when he attempted to use this crossing which

the defendant had invited the public generally to use. Having created the appearance that the crossing in question was a portion of Ione avenue, that such avenue passed entirely over its right of way, and having suffered the public for several years to act upon such appearance, it would be a monstrous doctrine that it could claim that it owed the plaintiff no common law duty while he was using this very crossing it had assured him he could use as a public highway crossing. No authority can be found to sustain such a rule of law. Indeed, it is not contended here by the defendant that the plaintiff did not make out a sufficient case of negligence against the defendant to warrant a verdict in favor of the plaintiff. But it is urged that plaintiff did not establish the cause of action set up in his complaint. The question before us is a question of variance. One cause of action, it is contended, was relied on in the pleading, and an entirely different one was proved on the trial, and this, too, against objection on the specific ground that the evidence was not within the issues. The case before us does not present those features which, when they exist, make it the duty, even of the appellate court, to amend a pleading to conform to the proof. The evidence to which we have referred was objected to on the ground that it did not tend to prove the case set forth in the complaint. The learned trial judge intimated to the plaintiff at the very commencement of the trial that he thought that plaintiff was upon dangerous ground, and that he would regard it safer for plaintiff to amend, and he offered to allow the necessary amendment to be made. But the plaintiff elected to stand upon the complaint as originally framed. It is thus apparent that the learned trial judge acted with the utmost fairness, and if we should be compelled, under the law, to affirm the judgment, the plaintiff's counsel would have only their own temerity to blame for the result.

In determining whether there was a variance between the averments of the complaint and the evidence adduced on the trial it is necessary to refer now to the allegations of that pleading. The portions of it material to this question are as follows: "That

on the 19th day of November, 1894, within the limits of the City
of Grand Forks, at a point where the defendant's railroad crosses
Ione avenue, said avenue being a public highway, and in constant
use as such, this plaintiff was lawfully attempting to drive his
team of horses and wagon across the track of said railroad, when
defendant's agents and servants carelessly and negligently ran a
locomotive engine and train of cars upon said wagon, thereby
injuring plaintiff, who was seated on said wagon, by violently
throwing him out and against the cowcatcher attached to said
locomotive and upon the ground with such force as to break,
bruise, and mangle his left leg, from the effects of which injury,
and as a result thereof, it was thereafter necessary to have said
leg amputated, which was done in the month of March, 1895."
"(3)   That by reason of the facts aforesaid plaintiff has suffered
great pain, and is permanently injured, maimed, and crippled for
life; that he was confined to his bed by reason thereof continuously
from the date of such accident until on or about the 18th day of
April, 1895, and was compelled to and did expend by reason
thereof the sum of two hundred dollars ($200) for medical
attendance. (4) That said train was running at a dangerous,
reckless, negligent, and unusual rate of speed at the time it struck
said wagon, to-wit, at the rate of thirty miles an hour; and when
approaching the said crossing defendant's servants and employes
in charge negligently failed to give any signal or alarm by ringing
the bell or blowing the whistle or otherwise, and never attempted
to check or stop said train; that said injuries were caused by the
careless and negligent acts of the defendant, as above stated, and
without negligence on the part of this plaintiff. (5) That by
reason of said injuries plaintiff has suffered damages in the sum
of twenty thousand two hundred dollars ($20,200.00.") It is
apparent that the pleading is not framed with reference to the
statute requiring the ringing of the bell or the blowing of the
whistle at crossings. The statute is not referred to. There is no
averment touching the statutory duty of railroads in such cases.
The whole tenor of the complaint is against the idea that the

plaintiff was proceeding on the narrow theory of liability from violation of a statutory provision. The plaintiff was seeking to recover damages for negligence, and we would naturally expect him to so draw his complaint as to embrace the widest possible theory on which defendant could be held responsible. We cannot infer that he deliberately intended to waive his right to insist upon the discharge by defendant of its common law duty to him to use ordinary care to protect him against injury at the crossing it had invited him and others to use. On the contrary, the complaint shows that he intended to hold defendant strictly to this common law duty it owed him. The allegations of the complaint are not limited to the fact of the failure to ring the bell or blow the whistle. The pleading distinctly sets forth that the defendant failed to give any signal or alarm by ringing the bell or blowing the whistle or otherwise; and it contains the further averment that the train was being run at a negligent, dangerous, unusual, and reckless rate of speed. As we construe the pleading, it sets forth the common law duty of the defendant to exercise ordinary care at a public crossing, and its negligent discharge of such duty. At the trial such a cause of action was made out. There was, therefore, no variance between the pleading and the proof. In *Railway Co.* v. *Dillon*, (Ill. Sup.) 15 N. E. 182, the same question was involved. The court said: "It is finally urged, with great persistence, that the avenue in question is not, within the meaning of our statute, a public highway, and that, as the action is based exclusively on the statute, the failure to ring a bell or sound the whistle was violative of no duty which it imposes, and hence no cause of action is shown. We do not concur in this view. It is to be observed, in the first place, this is not a statutory action to recover the penalty which the statute prescribes for a failure to give such a signal. If it were, quite a different question would be presented. The present is a common law action, brought for the failure to perform a duty imposed by law. Under the facts disclosed by the record, we do not think it essential to the main-

tenance of the action that this duty should necessarily arise under the statute, notwithstanding the pleader possibly may have so regarded it in framing the declaration. Without regard to the statute, it is the duty of those having charge of trains to give notice of their approach at all points of known or reasonably apprehended danger. This is almost universally done by the ringing of a bell or sounding of the whistle, and frequently both. In exceptional cases, where the highest degree of care is deemed advisable, flagging is resorted to. That these duties are enjoined by the common law is not disputed, but the claim is, as already seen, that the action is brought upon the statute, and that the plaintiff, therefore cannot avail himself of his common law rights, although the averments in the declaration are otherwise broad enough for such purpose. This, as we view it, is an entire misapprehension of the whole matter. As before indicated, the action is not brought on the statute, nor does it purport to be. While there are certain expressions in that part of the declaration which attempts to define the duty of the defendant, justifying the inference that the pleader had the statute in his mind, yet there is really nothing in it that can properly be called even a reference to the statute. Even the expressions referred to as showing the drift of the pleader's thoughts are entirely superfluous and uncalled for, and may, therefore, be treated as surplusage. As mere matter of composition, tending to perspicuity, such averments are admissable, and even commendable, if not misleading. * * * Even if the declaration in this case contained a direct reference to the statute, and it was evident that the pleader expected to rely exclusively upon it, still it would not, in our opinion, present an insuperable obstacle to a recovery on common-law grounds, if the allegations otherwise were sufficiently broad, and the evidence warranted it. In a note to Oliv. Prec. 528, where this subject is under discussion, we find the following: 'So, also, where the action is sustainable at common law, and declaration concludes against the statute or statutes,' etc., and the statutes have been misquoted or incorrectly referred to, or there is no statute in fact

in relation to the subject, those words in the declaration shall be rejected as surplusage, and the action shall be maintained at common law. See Galt. 212; Com. Dig. 'Action upon Statute,' (C.) The general principle here announced fully answers the contention of appellant."

The complaint pointed out the precise location of the accident, and in this respect the evidence conformed to the allegation. It is only because the plaintiff employed in his complaint the words "public highway" that it is here urged that there is a fatal variance. It is said that a strictly legal public highway was not established, but that, on the contrary, it was conclusively shown that there was in that sense of the phrase no public highway where plaintiff was injured. But it was not necessary to show a strictly legal highway to make out a case within the complaint. Plaintiff's right to recover damages did not depend upon there being a legally established highway at that point. All that it was necessary for him to prove was the fact that with respect to its duty to him the defendant owed him the same measure of care at this point that it would owe him at a legally laid out public highway; that with regard to its duty to him the crossing was in all respects the same as the crossing of a lawful public highway. The plaintiff in fact proved as to the defendant that there was a public highway at this point. It was in all respects a public highway for the purposes of fixing the extent of defendant's duty to plaintiff at this crossing. Whether it was a highway in any other sense or for any other purpose was immaterial. This is not an action brought for the purpose of determining whether there is a legal highway at the place where plaintiff was injured. All he is required to prove in this case is that there was in fact a highway at this place as to plaintiff and the public. The defendant could not possibly have been misled. The exact locality was pointed out in the complaint. Defendant was notified by that pleading that the plaintiff would claim on the trial that the crossing was, as to defendant, a public highway for the purposes of determining the scope of defendant's obligation with

respect to the precautions to be used to protect him from injury at this place. Whether it was a public highway for any other purposes it was unnecessary to prove, for such proof would not have increased one particle the obligation of the defendant to protect plaintiff from harm at this point. It is unjustifiable to place upon the words "public highway" such a meaning as will indicate a purpose on the part of the pleader to restrict himself in the proof of his cause of action. Where a railroad company has invited the public to use a crossing as part of a public highway, such crossing is, as to it, in all respects the same as a strictly legal public highway. In the language of some of the decisions the company is estopped from asserting the contrary. See *Railway Co.* v. *Lee*, (Tex. Sup.) 7 S. W. 857. When, therefore, the pleader refers to the crossing as a public highway crossing, the allegation is that, with respect to the defendant's duty to the public generally and to the plaintiff in particular, it was a public highway, and not merely that it was in all strictness a legal public highway. When these words are employed in a complaint, they must be interpreted in the light of the rule that the railroad company is liable if there is in fact a public highway at the point, just the same as though the highway had been legally laid out. Language in a pleading must have a reasonable construction. It is certainly a reasonable construction to attribute to the plaintiff, by the use of such words, a purpose to set forth the broadest claim he can make against the defendant, when the courts themselves employ such words to designate a highway which, while not legally laid out, a railroad company, by its conduct or acquiescence, has made in all respects a legal public highway for the purpose of measuring the extent of its obligations to the public. Nor will any injustice result to railroad companies under the rule of construction we here enunciate. If the precise locality is pointed out in the complaint, the defendant will never be surprised by evidence proving not a strictly legal highway, but only a highway as to the defendant with respect to his duty to the plaintiff. The exact place being designated, the

defendant can always ascertain the facts, and be prepared to meet, so far as they can be met, all theories on which can be predicated the claim that with respect to its duty to the plaintiff the crossing was in the eye of the law a public highway. *Webb* v. *Railroad Co.*, 57 Me. 117. In that case the complaint alleged that the plaintiff was injured while passing along "a public street and highway." The question of variance was before the court. On this point the court said: "And, even if the evidence fell short of establishing a highway *de jure*, we think that upon the issue presented by these pleadings, and upon the state of facts exhibited by this report, a variance in this particular would be an immaterial one, not affecting the rights of the parties or the rules of law or evidence applicable in the trial of the cause, or the inferences to be drawn from the testimony, in any manner. Here was an avenue through which poured the whole tide of travel into and out of the city in that direction, affording the most direct route to the defendant's freight depot and grounds; used and recognized by all and sundry as a highway for years before the defendants began to run over the track of the P. S. & P. Railroad, located there." The court further remarked: "That it was not for the defendants to say in this action that there was no highway there if there was a crossing which they and all others interested permitted the public to use as such, and which was, in fact, in great and constant use. Under such circumstances the plaintiff would be there with the rights of a traveler on a highway, and, as regarded him and all others traveling there, the defendants would be subject to the same duties and liabilities as if the street had been a highway *de jure* as well as *de facto*. As regards the issue which these parties were litigating then, a variance of this description, were its existence demonstrated, would be immaterial. The defendants, upon this point, rely upon the case of *Shaw* v. *Corporation*, 8 Gray, 45. We do not question the correctness of that decision as to the materiality of the variance in that case. The variance between the declaration and the proof as to the place of the accident, changing it from the highway to a point

without the limits of the highway, on the defendants' grounds, would necessarily change the whole course of inquiry, and affect all the inferences to be drawn as to the suitableness of the horse, the degree of skill and care in driving exercised by the plaintiff, and other matters vital to the plaintiff's suit. The reasons assigned for holding the variance to be in that case radical and essential, do not exist here. It mattered not (if the plaintiff was at the place· of the accident with the rights of a traveler on a highway, and the defendants were there, subject to the duties and liabilities of a railroad crossing a highway at grade, as was assuredly the case upon the testimony adduced here) whether there was or was not error in the proceedings of the county commissioners a dozen or fifteen years before. When all parties were proceeding upon the hypothesis that there was no error, it would not change the relations of the parties in this suit to each other should it be found that all were mistaken in that particular." In *Kelly* v. *Railroad Co.*, (Minn.) 9 N. W. 588, the allegation was that plaintiff was injured where the defendant's road intersected a highway. This word "highway" is the equivalent of the words "public highway." A highway is not a highway unless it is public. The court held that under such a pleading evidence was competent which proved that defendant had recognized the crossing as a highway, and had permitted the public to treat it as such for years. The court said: "Defendant also took exception to· the ruling of the court admitting evidence tending to show that the *locus in quo* had been opened, .worked, and traveled continuously for ten years as a highway. This was competent evidence tending to prove the existence of a highway by common-law dedication. But the evidence was admissible upon still another ground. Even if this was not a legal highway, yet if it was openly and notoriously used as such by the public, and the defendant recognized it as such by permitting the public to use it, and by assuming to maintain a crossing at that point, they would be bound to exercise

precisely the same precautions to keep it in repair, as if it was in fact a legal highway. *Webb* v. *Railroad Co.*, 57 Me. 117."

The chief contention made by counsel for defendant both here and in the court below was that plaintiff had alleged a public highway, which would, so far as statutory provisions were concerned, be governed by the general statutes requiring the ringing of the bell or the blowing of the whistle; but that he had proved a street within a city having control over the general subject of the regulation of the speed of trains and the giving of crossing signals within the city limits, and that, because such control had been delegated by the legislature to the governing body of such city, the general statutes were repealed as to all streets within such city, leaving the matter to such regulations as should be prescribed by the city council. The view we take of this case renders it unnecessary for us to express any opinion on this very interesting question. Whatever regulations have been established by the legislature or by the city council of Grand Forks, and whether those found in the general statutes or those embodied in city ordinances are the regulations which apply to the street in question, it nevertheless is true as a proposition of law that the common law duty of the defendant to the plaintiff was not thereby diminished in the slightest particular. It is not competent for the legislature, much less for a city council, to declare what shall constitute ordinary care in every case, irrespective of the peculiar circumstances of each case. Nor has the legislature attempted to do so, or to authorize the city council of Grand Forks City to do so. It has fixed a minimum duty by statute. Under the authorities, failure to discharge this statutory duty is evidence of negligence. Indeed, many of the cases hold that, if the statutory duty is not performed, negligence is conclusively made out. The legislature has also authorized municipal corporations to pass ordinances regulating the duties of railroads to the public within city limits. But back of all these regulations lies the question whether in each case proper care was exercised by the railroad company under the facts of the particular case. This

is a judicial question. It is a question to be settled in each case in the same manner in which it would be settled were there no statutory or other regulations whatever on the subjects, with the single qualification that failure to comply with the provisions of statute or ordinance on this subject (whatever may be applicable) would be evidence of negligence,—perhaps conclusive evidence. That statutory or other regulations do not diminish the common law duty is well settled. *Railway Co.* v. *Netolicky*, 67 Fed. 665, 14 C. C. A. 615; *Railway Co.* v. *Ives*, 144 U. S. 408-420, 12 Sup. Ct. 679; *Shaber* v. *Railway Co.*, (Minn.) 9 N. W. 575; *Thompson* v. *Railroad Co.*, 110 N. Y. 630, 17 N. E. 690; *Vandewater* v. *Railroad Co.*, (N. Y. Ct. App.) 32 N. E. 636; *Railroad Co.* v. *Hague*, (Kan. Sup.) 38 Pac. 257; *Railroad Co.* v. *Perkins*, 125 Ill. 127, 17 N. E. 1; *Winstanley* v. *Railway Co.*, 72 Wis. 375, 39 Pac. 856; *Guggenheim* v. *Railway Co.*, 66 Mich. 150, 33 N. W. 161. These cases all hold that regulations by ordinance or statute of the speed of trains and of the giving of signals at crossings have no effect to exempt railroads from the employment of other means to protect persons and property at crossings when the exercise of due care requires the employment of other means. We might, for the purposes of this case, assume that all the statutory provisions on the subject of ringing the bell and blowing the whistle on approaching crossings were abrogated as to all streets within the city by the grant of power to the city council of Grand Forks City to legislate on the subject; and we might further assume that the council had failed to exercise this power, and yet it would be just as true that the common law obligation resting on the defendant to use due care to protect persons and property at this crossing would be in force the same as though the general statutory provisions were applicable to this particular crossing. So far as the common law duty is concerned, it is immaterial what regulations govern. Nor is it at all important whether there are any regulations whatever on the subject.

We have investigated the defendant's contention that plaintiff's contributory negligence was established as a matter of law by the

evidence he adduced.  We are unable to reach this conclusion. That question was, under the evidence, a question of fact for the jury.  It would be a needless expansion of this opinion to set forth here the evidence bearing on this point.

A question of practice remains for consideration.  Before the argument of this case on the merits, the defendant's counsel moved to strike out the bill of exceptions on the ground that it was settled by the District Judge after the appeal had been perfected.  Notwithstanding the very ingenious argument of defendant's counsel, we are clearly of opinion that the court had power to settle the bill, although the appeal had been perfected. The act of settling a bill is not the taking of a new step in the case.  It is merely the gathering up and bringing upon the record of facts which would not otherwise appear upon the record.  The settlement of a bill is in furtherance of the intelligent exercise by this court of its powers of review.  Without such a bill the case could not be reviewed on its merits.  By settling a bill, the trial judge does not assume to perform any new judicial act in the case which can in any manner affect the decision appealed from, or to alter in any manner the condition in which the case stood at the time the appeal was taken.  He merely embodies in authentic form a record of the proceedings already had, and on which his previous judicial action was predicated, to the end that the appellate court may determine whether such previous judicial action was legal or erroneous.  All the adjudications seem to support our view that the trial court had full authority to settle the bill after the appeal had been perfected.  *James* v. *Leport*, 19 Nev. 174, 8 Pac. 47; *Flynn* v. *Cottle*, 47 Cal. 527; *National City Bank of New York* v. *New York Gold Exch. Bank*, 97 N. Y. 645; *Colbert* v. *Rankin*, 72 Cal. 197, 13 Pac. 491; *Luyster* v. *Sniffen*, 3 How. Prac. 250; *State* v. *Town Board of Sup'rs of Delafield*, 69 Wis. 264, 34 N. W. 123; *Hunnicutt* v. *Peyton*, 102 U. S. 333.  In the case of *Moore* v. *Booker*, 4 N. D. 543, 62 N. W. 607, we practically recognize this power as existing in the District Courts, but we there held that, where the original record has been transmitted to

this court, the trial judge cannot amend a bill of exceptions without having the record sent back to him, that he may have before him the bill he desires to amend. In that case, the application was not to settle a bill before argument in this court, but to amend a bill already settled, and this, too, at a time subsequent to the argument of the case on the merits. The case did not disclose the fact that the party applying for the amendment might not, by the exercise of reasonable diligence, have ascertained the error in the bill at the time it was originally settled, or at least before final argument in this court. After a case has been submitted to this court on the merits, and the work of investigation has commenced, parties will not be allowed the privilege of amending the record except on condition of making a very satisfactory showing, and that showing must be made in this court, and this court will in all such cases determine whether, under the circumstances, the record should be sent back for correction. Such belated applications result in delay to the adverse party, whose rights and interests are not to be ignored in passing on the question whether he shall be subjected to the delay and expense consequent upon the remanding of the record for amendment; such remanding of the record for amendment usually necessitating a continuance of the case to the next term, and a new argument at that term upon, perhaps, an entirely different record. We think the trial judge had full power to settle the bill notwithstanding the fact that the appeal had been perfected, the original record in the case still being in the District Court. But for the error already alluded to, the judgment is reversed, and a new trial is ordered. All concur.