(74 N. W. Rep. 996.)

---

AXEL JOHNSON *vs.* THE GREAT NORTHERN RAILWAY CO.

Opinion filed April 9th, 1898.

**Negligence a Jury Question.**

> *Held*, that questions of negligence and contributory negligence were properly submitted to the jury.

**Lookout at Crossings.**

> *Bishop* v. *Railway Co.*, 4 N. D. 536, followed as to obligation of railroad company to keep a lookout for persons and property at public crossings.

Appeal from District Court, Ward County; *Morgan*, J.

Action by Axel Johnson against the Great Northern Railway Company. Plaintiff had judgment, and defendant appeals.

Affirmed.

*B. D. Townsend*, for appellant.

*James Johnson*, for respondent.

Corliss, C. J. Plaintiff has recovered a judgment for the value of his wagon, with its load of coal, which it is undisputed, were destroyed by one of the defendant's freight trains at a railroad crossing. In answering the first point made by counsel for the defendant, that the highway had not been legally established, it is only necessary to refer to a few facts in the case, and, in connection therewith, cite the previous decisions of this court. It is not denied that the crossing had been used by the public, as part of a public highway, for at least eight years. before the accident. One of the witnesses testified that he had used it for a period of 14 years. The defendant had placed there the usual planking, and the jury were justified in finding that it had erected there a sign warning travelers upon the highway that there was a railroad crossing at that place. So far as the duty of the defendant to the public was concerned, the crossing was as much a public crossing as though the highway had been laid out in strict accordance with law. *Coulter* v. *Railway Co.*, 5 N. D. 568, 67 N. W. Rep. 1046. See, also, *Bishop* v. *Railway Co.*, 4 N. D. 540, 62 N. W. Rep. 605.

It is urged that the property was placed in the position of peril which it was in at the time of the collision through the plaintiff's own carelessness, and that, therefore, he cannot recover. He was drawing coal from his coal mine, a few miles west of Minot, in this state, to that city, and was compelled to cross the railroad track at this point in order to reach the market for his fuel. While driving over the track, the axle of one of the wheels broke; and, before he was able to remove the wagon from the place of danger, it was struck by one of defendant's engines, and completely destroyed, it appears that the planks between the

rails at this crossing had all been taken out, except one or two in the center. This was done that there might be room for the flangers on the engine to operate inside of the rails; it being necessary to use the flangers for the purpose of keeping the snow away from the rails. But it appears that the flangers were only six inches wide, and yet the space between the inside of the rail on each side and the plank in the center of the track was considerably more than six inches. One witness said that the space was more than ten inches wide. But we need not dwell on this matter. We will assume, for the purposes of this case that what the defendant did about removing the planking for the winter season was not a negligent act. Such act was not the proximate cause of the injury. The proximate cause was the negligence of the defendant's employes in charge of the engine drawing the freight train, in failing to discover the fact that the plaintiff's property was in a situation of peril on a public crossing in time to prevent a collision therewith. It is urged that plaintiff's wagon would not have broken down upon the track, and thus been placed in a situation where it could be struck by a passing train, had plaintiff not been careless, in attempting to drive over the track at this point with a loaded wagon. But there was no other crossing he could use, and it would be an extraordinary doctrine if a railroad company could, in effect, close up a highway, by making it dangerous at the point of intersection with its track; holding over the head of each traveler the penalty of being himself chargeable with responsibility for injuries occasioned by a condition of the highway created by itself. We do not think that plaintiff was, as a matter of law, guilty or contributory negligence in essaying to cross over the track with his loaded wagon. The question was for the jury, and their verdict was in his favor on this point. It matters not, however, whether plaintiff was placed in this predicament without any fault on his part, or because of his own carelessness. In either view of the case, it would be true that defendant owed him the duty of using reasonable care in keeping a lookout for persons and property near or

upon this public crossing. Just such an accident as had occurred was one which might be anticipated by a reasonably prudent man. The defendant itself had, by removing the planking, thus leaving the rails four inches higher than the ground, created a condition at this very crossing which was likely to cause heavily loaded wagons to be stalled or broken down at that point. Could it nevertheless run its trains oblivious to such danger, and then escape the charge of negligence? We think not. There was evidence that those in charge of the engine could have seen the danger to plaintiff's wagon when the train was half a mile away. While it was still this distance from the crossing, a man who had been sent up the track by the plaintiff to signal the train to stop made efforts, by waiving his hands and his hat, to warn the engineer and fireman of the danger. And yet, nothwithstanding this fact, there is evidence that no whistle for brakes was sounded until the train was within about 250 feet of the crossing. It is true that there was evidence that the train could not have been stopped without running at least 1,600 feet. But it does not appear that if reasonable diligence had been used by the men in charge of the locomotive, in keeping a watch for obstructions at this crossing, they could not have discovered the peril to the wagon when more than 1,600 feet from the crossing, and therefore have discovered it in time to stop the train before it could reach the crossing. The law relating to the subject of the duties of railroads on approaching crossings was stated by this court in *Bishop* v. *Railroad Co.*, 4 N. D. 536, 62 N. W. Rep. 605, in the following language: "It follows that the trainmen, in approaching the crossing, were not at liberty to assume in advance that animals would not be upon its tracks at the crossing. On the contrary, the fact that they were approaching a crossing devolved upon the men in charge of the train the duty of keeping a special lookout to avoid a collision with persons or animals that might be lawfully upon such crossing. The care should be commensurate with the danger to be reasonably apprehended. This general rule imposes upon railroads the duty of exercising

exceptional care at all crossings, because upon a crossing there is greater reason than at other places to apprehend danger from collisions with persons and domestic animals." Applying this rule to the facts of this case, there can be no doubt about the duty of the court to submit the case to the jury, as it did. We have considered all the arguments and points made by counsel for the defendant, but do not deem them of sufficient importance to warrant a discussion of them in this opinion.

Finding no error, the judgment of the District Court is affirmed. All concur.