JAMES P. CAIN, as Trustee of the Estate of Charles T. Tracey, Bankrupt, v. NORTHERN PACIFIC RAILWAY COMPANY, a Corporation, and Herman Leutz, Intervener.

(— N. W. —.)

**Collision — traction engine on railroad track — observance of approaching train — damages — recovery — negligence.**

Where a traction engine is stuck upon a railroad crossing, at a point where the track is curved and persons in charge of the train cannot determine its exact position, and the train is observed at a distance of some 5 miles, and no

effort is made to flag said train or in any manner to attract the attention of the persons in charge thereof, excepting to blow the whistle of the tractor, the persons in charge of the tractor are guilty of such negligence as prevents recovery for damages sustained by the collision.

Opinion filed October 13, 1914. Rehearing denied November 18, 1914.

Appeal from the District Court of Stark County, *Crawford, J.* Reversed.

*Watson & Young,* and *E. T. Conmy,* for appellant.

There is no negligence shown on the part of defendant that proximately caused the injury and damages. Pennsylvania Co. v. Davis, 4 Ind. App. 51, 29 N. E. 425; Early v. Louisville, H. & St. L. R. Co. 115 Ky. 13, 72 S. W. 350; Cincinnati, N. O. & T. P. R. Co. v. Reynolds, 31 Ky. L. Rep. 529, 102 S. W. 890.

The undisputed evidence shows plaintiff was guilty of contributory negligence as a matter of law. The question of negligence becomes one of law for the court when the facts are undisputed and the inferences to be drawn from them are so clear that reasonable men ought not to differ. Northern P. R. Co. v. Tracy, 111 C. C. A. 557, 191 Fed. 15; Elliott, Railroads, § 1179c, p. 394.

This action is *res judicata.* The same issues have already been tried and a decision rendered on the merits by a court of competent jurisdiction. Seep v. Ferris-Haggarty Copper Min. Co. 120 C. C. A. 191, 201 Fed. 893; United States v. Wonson, 1 Gall. 5, Fed. Cas. No. 16,750; Parsons v. Bedford, 3 Pet. 433, 7 L. ed. 732; Walker v. New Mexico & S. P. R. Co. 165 U. S. 596, 41 L. ed. 841, 17 Sup. Ct. Rep. 421, 1 Am. Neg. Rep. 768; Capital Traction Co. v. Hof, 174 U. S. 13, 43 L. ed. 877, 19 Sup. Ct. Rep. 580; Chicago Theological Seminary v. People, 189 Ill. 439, 59 N. E. 980.

Where the mandate of a superior court requires the entry and execution thereof and in conformity therewith, no different order or judgment can be entered in the lower court. Newberry v. Blatchford, 106 Ill. 584; Hook v. Richeson, 115 Ill. 431, 5 N. E. 98; Gage v. Bailey, 119 Ill. 539, 9 N. E. 199; Parker v. Shannon, 121 Ill. 452, 13 N. E. 155; Gage v. Stokes, 125 Ill. 40, 16 N. E. 925; Buck v. Buck, 119 Ill. 613, 8 N. E. 837; West v. Douglas, 145 Ill. 164, 34 N. E. 141; Lynn v. Lynn, 160 Ill. 307, 43 N. E. 482.

And where questions have been passed upon and determined by the supreme court and the cause is remanded generally, it is not open in the lower court as to such questions. Brooklyn v. Orthwein, 140 Ill. 620, 31 N. E. 111; Reed v. West, 70 Ill. 479; Rising v. Carr, 70 Ill. 596; Ogden v. Larrabee, 70 Ill. 510; Champaign County v. Reed, 106 Ill. 389; Loomis v. Cowen, 106 Ill. 660; Smyth v. Neff, 123 Ill. 310, 17 N. E. 702; Tucker v. People, 122 Ill. 583, 13 N. E. 809; Burton v. Perry, 146 Ill. 71, 34 N. E. 60; Palmer v. Woods, 149 Ill. 146, 35 N. E. 1122.

Full faith and credit is given to adjudications of a Federal court by state courts. Wandling v. Straw, 25 W. Va. 692; Borches v. Arbuckle Bros. 111 Tenn. 498, 78 S. W. 266; Holstein v. Edgefield County, 64 S. C. 374, 42 S. E. 180; Baldwin v. Rice, 44 Misc. 64, 89 N. Y. Supp. 738, 183 N. Y. 55, 75 N. E. 1096; Wonderly v. Lafayette County, 150 Mo. 635, 73 Am. St. Rep. 474, 51 S. W. 745; Thornton v. Natchez, 88 Miss. 1, 41 So. 498; 11 Decen. Dig. § 638; 24 Am. & Eng. Enc. Law, § 9, 833.

The question of contributory negligence must be considered and determined regardless of defendant's negligence. West v. Northern P. R. Co. 13 N. D. 221, 100 N. W. 254; Hope v. Great Northern R. Co. 19 N. D. 438, 122 N. W. 997; Cromwell v. Sac County, 94 U. S. 351, 25 L. ed. 195; Washington Steam Packet Co. v. Sickles, 24 How. 333, 16 L. ed. 650; Bissell v. Spring Valley Twp. 124 U. S. 225, 31 L. ed. 411, 8 Sup. Ct. Rep. 495; Hanna v. Read, 102 Ill. 596, 40 Am. Rep. 608; Wright v. Griffey, 147 Ill. 496, 37 Am. St. Rep. 228, 35 N. E. 732; Leopold v. Chicago, 150 Ill. 568, 37 N. E. 892; Louisville, N. A. & C. R. Co. v. Carson, 169 Ill. 247, 48 N. E. 402; Markley v. People, 171 Ill. 260, 63 Am. St. Rep. 234, 49 N. E. 502; Young v. People, 171 Ill. 299, 49 N. E. 503; Chicago Theological Seminary v. People, 189 Ill. 439, 59 N. E. 979; Wilson v. Deen (Milne v. Deen) 121 U. S. 525, 30 L. ed. 980, 7 Sup. Ct. Rep. 1004; Louis v. Brown Twp. 109 U. S. 163, 27 L. ed. 892, 3 Sup. Ct. Rep. 92; Corcoran v. Chesapeake & O. Canal Co. 94 U. S. 741, 24 L. ed. 190; Southern P. R. Co. v. United, States, 168 U. S. 18, 42 L. ed. 355, 18 Sup. Ct. Rep. 18; Stearns v. Lawrence, 28 C. C. A. 66, 54 U. S. App. 532, 83 Fed. 742.

A defendant may interpose as many defenses as he has, and the court may determine all, though the decision of any one may be sufficient to

end the case, and as to such as are considered and determined the parties are concluded. Sheldon v. Edwards, 35 N. Y. 279; Florida C. R. Co. v. Schutte, 103 U. S. 118–142; 26 L. ed. 327–335; Hawes v. Contra Costa Water Co. 5 Sawy. 296, Fed. Cas. No. 6,235; Doty v. Brown, 4 N. Y. 71, 53 Am. Dec. 350; Cromwell v. Sac County, 94 U. S. 351, 24 L. ed. 195; Charles E. Henry Sons Co. v. Mahoney, 97 Ill. App. 313; 2 Decen. Dig. p. 1097, and cases cited.

*T. F. Murtha* and *C. H. Starke,* for respondents.

It is the duty of men in charge of a train approaching a public crossing to keep a special lookout to avoid collisions with objects that might be lawfully on the crossing. In such cases the law imposes exceptional care. Bishop v. Chicago, M. & St. P. R. Co. 4 N. D. 536, 62 N. W. 605; Coulter v. Great Northern R. Co. 5 N. D. 568, 67 N. W. 1046; Johnson v. Great Northern R. Co. 7 N. D. 284, 75 N. W. 250, 4 Am. Neg. Rep. 568; Acton v. Fargo & M. Street R. Co. 20 N. D. 434, 129 N. W. 225; Belshan v. Illinois C. R. Co. 117 Minn. 110, 134 N. W. 507; San Antonio & A. P. R. Co. v. Votaw, — Tex. Civ. App. —, 81 S. W. 130.

That reasonable men might not agree on just what should have been done affords no reason or excuse for defendant's negligence. If all reasonable men could agree on the question of negligence or contributory negligence, they would agree as did the jury, that plaintiff was not negligent. The question of contributory negligence was clearly one for the jury. Bishop v. Chicago, M. & St. P. R. Co. 4 N. D. 536, 62 N. W. 605, supra; Johnson v. Great Northern R. Co. 7 N. D. 284, 75 N. W. 250, 4 Am. Neg. Rep. 568, supra; Acton v. Fargo & M. Street R. Co. 20 N. D. 434, 129 N. W. 225, supra; Belshan v. Illinois C. R. Co. 117 Minn. 110, 134 N. W. 507, supra; 33 Cyc. 922–924; Klotz v. Winona & St. P. R. Co. 68 Minn. 341, 71 N. W. 257, 3 Am. Neg. Rep. 201; Continental Improv. Co. v. Stead, 95 U. S. 161, 24 L. ed. 403; St. Louis, I. M. & S. R. Co. v. Tomlinson, 78 Ark. 251, 94 S. W. 613; St. Louis, I. M. & S. R. Co. v. Denty, 63 Ark. 177, 37 S. W. 719; Virginia Midland R. Co. v. White, 84 Va. 498, 10 Am. St. Rep. 874, 5 S. E. 573; Zipperlen v. Southern P. Co. 7 Cal. App. 206, 93 Pac. 1049; Bullock v. Wilmington & W. R. Co. 105 N. C. 180, 10 S. E. 988; Crowley v. Louisville & N. R. Co. 21 Ky. L. Rep. 1434, 55 S. W. 434; Wilds v.

Hudson River R. Co. 33 Barb. 503; Illinois C. R. Co. v. Murphy, 11 L.R.A.(N.S.) 352, and annotation, 123 Ky. 787, 97 S. W. 729.

Men suddenly placed in dangerous positions must act in a careful and prudent manner and according to their best judgment; and because it can afterwards be pointed out that a different course of conduct might have produced different results, affords no true ground upon which to base the claim of negligence. Chicago & N. W. R. Co. v. Netolicky, 14 C. C. A. 615, 32 U. S. App. 168, 406, 67 Fed. 668; Haff v. Minneapolis & St. L. R. Co. 14 Fed. 558, 7 Am. Neg. Cas. 571; The City of Norwalk, 55 Fed. 102.

The United States district court could do nothing but to grant a new trial, and a new trial having been ordered, the plaintiff could take a nonsuit and begin his action over in the same or a different court. The former proceedings do not constitute res judicata. 3 Cyc. 481, 482 and note, 84; Chicago, B. & Q. R. Co. v. Chicago, 166 U. S. 263, 41 L. ed. 994, 17 Sup. Ct. Rep. 992.

The decision on a prior appeal fixes the law of the case on the same facts, but not on a different state of facts. Chapman v. Greene, 27 S. D. 178, 130 N. W. 30; 3 Cyc. 493, and note 42; Hastings v. Foxworthy, 34 L.R.A. 321, see notes pages 332, 345, 346.

BURKE, J. The accident upon which this action is based occurred about 10 o'clock in the forenoon of the 28th of August, 1909, upon a crossing of the defendant company at the village of Taylor, North Dakota, the crossing being practically a street of the village, about 1,050 feet east of the depot. The defendant's tracks at this point run practically east and west, but from the east the roadway approaches at a three-degree curve beginning about one half a mile east of the depot and extending about 1,600 feet or until about 900 feet from the depot, where the track continues and goes straight west through the town. The crossing in question is on the curve, about 150 feet east of the beginning of said straight portion of the track. There is also a passing track south of the main track parallel thereto, and 14 feet distant therefrom. Upon the day of the accident the company was engaged in ballasting its tracks at that point, and planks had been removed from the crossing for that purpose. A steam traction engine belonging to one Tracey was being driven that day by one Brown, engineer, and one Naset, fireman, both in the employ of Tracey. They approached the crossing from the south,

and, desiring to cross to the north, placed loose planks between the rails, and succeeded in crossing the first or passing track and getting the front wheels of the tractor over the main track and the rear or drive wheels between the rails thereof, but it was impossible to get the drivers over the north rail of the main track. When the tractor was in that position the men in charge discovered a train coming from the east. This discovery was made, owing to smoke from the train while at the village of Richardton, about 5 miles farther east. The men in charge of the tractor then tried to back, and succeeded in getting the drivers over the south rail and then backward until they struck the north rail of the passing track, where they stuck. In this position the boiler was over the track and the front wheels were right up against the south rail of the main track. The main crossing at this point was 18 inches above the surrounding country. The engineer of the tractor testifies in part: "After I saw the smoke I kept on trying to get over the track. I did not go back until I saw it was impossible to go ahead, then I reversed and tried to get back. I reversed and tried to get back after the train got in sight. I blew the whistle on the traction engine to give notice to the train. The whistle is one of those three-chamber whistles, pretty loud whistle. I was not surprised that he did not hear it. . . . I blew the whistle when the train was pretty close to me. She was not very far away." No other effort was made by the men in charge of the tractor to notify the train of the danger. The train was a passenger, the North Coast Limited, running late and making about 40 miles an hour. On account of the curve, the engineer was unable to see the crossing from the right-hand side of the engine, but the fireman upon the left side had a full view thereof, and testifies: "I was fireman on this engine. . . . The train where it approaches this crossing at Taylor is curved. . . . I was on the left side of the engine on the day in question. That is the south side of the track. . . . I saw this traction engine about 12 or 13 car lengths from the crossing. When I saw it at that time I could not tell where it was, I just about could tell where it was, and I couldn't quite either. They were kind of tumbling, and I couldn't tell whether they were on their side of the crossing. I thought they were on their side of the crossing, waiting for us to pass. When I first made out that this traction engine was on the track, we were about 8 car lengths from the crossing. I then told the engineer to stop and he set the emergency brake. Then we went about 8 or 9 car lengths be-

fore the train came to a stop. From my position in the cab I was prevented from telling whether this traction engine was on the track on account of the curve in the track. . . . I do not remember whether I was on my seat before we passed the east switch. When I got upon my seat I think I saw the engine about 12 or 13 car lengths from the crossing, about 1,000 feet. It took us about 7 or 8 car lengths to stop the train that day . . . it took us from six to eight hundred feet to stop the train." One Dyer, a brakeman on the train also saw the traction engine standing there. He thought it was standing there waiting for the train to pass. The traction engine was pushed off the track and badly injured. Action was brought and judgment had in the United States district court of North Dakota. An appeal was taken to the United States circuit court of appeals, where the judgment was reversed upon the grounds that the plaintiff was guilty of contributory negligence, and a new trial ordered. Northern P. R. Co. v. Tracy, 111 C. C. A. 560, 191 Fed. 18.

Plaintiff, however, instead of submitting to a new trial in the United States district court, dismissed that action and started a new one in the state court, limiting his demand for damages to the sum of $3,000, thus preventing a return of the action to the United States court. Trial was had to said state court resulting in a verdict for the plaintiff. This appeal alleged generally three grounds for reversal: First, that the defendant was not guilty of any negligence whatever; second, that plaintiff is guilty of contributory negligence; third, that the action is *res judicata*. All three of the propositions appeal to us strongly, but we will discuss only the second, which we have agreed, necessitates dismissal of the action, and renders unnecessary a decision upon the first and third grounds.

(1) The circuit court of appeals in its opinion uses the following language: "The servants of the plaintiff realized that the train was approaching the crossing and a collision was possible when the train was yet at Richardton, 5 miles distant. The traction engine was so massive that a collision might well result in loss of life to passengers on the train. The exigency was not so sudden as to preclude cool judgment. The train running at 40 miles an hour must have taken between seven or eight minutes to traverse the intervening distance. What effort was made to avoid the accident? An unsuccessful attempt was made to back

the traction engine.   This was essentially a doubtful experiment, and in this case entirely fruitless.   Next, a few blasts were blown on the steam whistle.   The engineer of the traction engine, familiar with the operation of trains, testified that it was no surprise to him that those blasts were not heard by the men in the cab of the locomotive.   The curve and the consequent difficulty in determining the relation of the traction engine to the railway track was patent.   Some signal ought to have been given.   There was time for one of the men to have proceeded eastward along the track, and, by the waiving of a hat or coat, to have indicated the danger.   If this had been done, the accident would not have happened.   That it ought to have been done seems to us so clearly to accord with reason and experience as to have entitled the defendant to a directed verdict."

Plaintiff attempts to avoid the logic of the above language by pointing out differences in the testimony taken at the two trials. The main differences being that in the latter trial a witness testified the crossing was in plain view for 2,700 feet from the east, and that there was no rolling ground or obstruction to prevent the fireman from seeing the engine.   Had the track been straight an altogether different question would have arisen.   The undisputed testimony is that the fireman saw the tractor in sufficient time to have avoided the accident had he realized that it was upon the main track, but on account of the curve at which he was approaching was unable to determine the danger until it was too late.   The fact that he could see the crossing for about half a mile would not be important unless, when so seeing it, he was apprised of the danger.   It seems plain to us that ordinary care upon the part of those in charge of the tractor required some effort to flag the approaching train.   If neither of the men in charge of the tractor could be spared for this purpose, at least a request should have been made to some of the by-standers to make the effort.   Plaintiff insists that the tractor standing on the track was signal enough to warn the train, and that if the train crew did not see it, neither would they have discovered a man sent forward to flag them.   We do not believe the argument sound.   Had the train approached upon a straight track, there would be still a debatable question, but on account of the curve some other warning was imperative.   Had a man walked down the track, even a short distance, making any demonstration, the fireman would have discovered it.   If, as argued by plaintiff, he had gone much

farther down the track and missed the fireman, yet might not he have attracted the engineer's attention as the train was passing ? Cases supporting this are numerous; we will cite only a few: Tracy v. Northern P. R. Co. 111 C. C. A. 557, 191 Fed. 15; Elliott, Railroads, § 1179c, p. 394; Johnson v. Great Northern R. Co. 7 N. D. 284, 75 N. W. 250, 4 Am. Neg. Rep. 568.

The trial court will set aside its previous order and enter a judgment for the defendant notwithstanding the verdict.